864 P.2d 175

STATE of Idaho, Plaintiff–Respondent,

v.

Timothy Lee WARNELL,
Defendant–Appellant.

No. 20326.

Court of Appeals of Idaho.

Oct. 26, 1993.

Petition for Review Denied Dec. 14, 1993.

Timothy Lee Warnell, pro se.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

This is a sentence review. Pursuant to a plea bargain, Timothy Lee Warnell pled guilty to one count of rape, first degree burglary, and use of a deadly weapon during the commission of a crime. *See* I.C. §§ 18–6101 (rape), 18–1401, –1402 (burglary), 19–2520 (use of a deadly weapon). For the rape charge, the district court imposed a determinate term of confinement of seventeen years to be followed by an indeterminate life term. For the burglary, Warnell received a concurrent unified ten-year sentence with a determinate term of four years. No sentence enhancement was imposed for the use of a deadly weapon. Warnell appeals the rape sentence, asserting that it is excessive and an abuse of discretion.[1] We affirm.

As accepted by the district court, the facts establish the following. Around midnight on March 26, 1992, Warnell telephoned the victim, who was a neighbor,

---

1. During the pendency of this appeal, Warnell moved for reduction of his sentence under I.C.R. 35. The motion was denied by the district court on January 29, 1993. Warnell has not appealed that decision. He has, however, submitted his motion, its supporting documentation, and the court's decision as part of the record on this appeal. That documentation includes Warnell's psychological evaluation performed by Clay H. Ward, a private psychologist. We refer to that evaluation later in this decision.

pretending to be an old school friend of the victim's husband and asked to speak to him. The victim stated that her husband was out of town and would return the next night. After the phone conversation, the victim went back to bed. Sometime later, she awoke to find a man, eventually identified as Warnell, wearing a blue cap and a nylon stocking as a mask, standing over her bed. He was holding a flashlight and a small kitchen knife. The victim screamed. Warnell placed the knife against her throat, told her he would kill her if she did not do as he said and removed her clothes. He placed the knife against her neck, breasts, and lower leg. He licked her body and performed cunnilingus. He placed the knife against her vagina. Somehow knowing that she kept a bottle of baby oil in another room, Warnell ordered her to get the bottle. He walked her to the room with his arm around her neck and the knife against her body. He also placed the knife between her legs as she walked. Back in the bedroom, Warnell poured the oil on the victim, telling her to masturbate him. She refused, prompting Warnell to force her to briefly perform fellatio on him. When she asked for a drink of water, Warnell walked her to the other room with the knife against her body. Warnell then had intercourse with the victim, then left. She immediately called a friend who had been a counselor in a rape crisis center, and then called the police. After several weeks of investigation, Warnell was arrested by the police and identified by the victim.

Initially, Warnell pled not guilty to all charges. Later, he agreed to plead guilty to rape, burglary, and use of a deadly weapon. In exchange, the state dismissed additional charges of aggravated battery, infamous crime against nature, and a second charge of using a deadly weapon. At sentencing, Warnell's counsel recommended a unified sentence of ten years, with a three-year minimum. The state recommended a twenty-year determinate term of confinement. The presentence investigator recommended a lengthy term of confinement. Noting that the rape was premeditated and brutal, the court imposed the sentence it thought was appropriate—seventeen years to life. Warnell appeals.

The statutory maximum punishment for rape is life imprisonment. I.C. § 18–6104. Warnell's sentence does not exceed that maximum. Therefore, the sentence will be upheld on appeal unless it is shown to be unreasonable considering the facts of the case, and therefore an abuse of discretion. *State v. Broadhead,* 120 Idaho 141, 143–45, 814 P.2d 401, 403–05 (1991), *overruled on other grounds, State v. Brown,* 121 Idaho 385, 394, 825 P.2d 482, 491 (1992); *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A sentence of confinement is reasonable if it appears at the time that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution. *Broadhead,* 120 Idaho at 145, 814 P.2d at 403; *Toohill,* 103 Idaho at 568, 650 P.2d at 710.

Although Warnell claims that his entire sentence is too long, he primarily attacks the indeterminate portion of his sentence. His focus is unavailing at this stage. When reviewing a sentence imposed under the Unified Sentencing Act, we treat the minimum period specified by the sentencing judge as the probable duration of confinement. I.C. § 19–2513; *Broadhead,* 120 Idaho at 146, 814 P.2d at 404; *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). Thus, we view Warnell's probable term of confinement as seventeen years. We will not assess the reasonableness of the indeterminate sentence. *State v. Bartlett,* 118 Idaho 722, 724, 800 P.2d 118, 120 (Ct.App.1990). Any inquiry into possible incarceration beyond the minimum term, and future parole determinations by the Commission of Pardons and Parole is premature and beyond the scope of our review. *King v. State,* 91 Idaho 97, 416 P.2d 44 (1966); *Bartlett, supra.* Warnell's course of redress for unreasonable confinement beyond his minimum term exists in filing a petition for writ of habeas corpus after he becomes eligible for parole. *Bartlett, supra. See,*

*e.g., Vittone v. State,* 114 Idaho 618, 759 P.2d 909 (Ct.App.1988).

To prevail on appeal, Warnell must establish that under any reasonable view of the facts his seventeen-year minimum term of confinement is an abuse of discretion. In deference to the discretionary authority of the sentencing court, we will not substitute our view for that of the sentencing court where reasonable minds might differ. *Broadhead,* 120 Idaho at 145, 814 P.2d at 404; *Toohill,* 103 Idaho at 568, 650 P.2d at 710. However, when reviewing a sentence, we conduct an independent examination of the record, focusing on the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App. 1982).

As the district court pointed out, this crime was a premeditated, brutal, and unprovoked invasion into an innocent woman's life. Warnell made sure the victim was alone and then entered her home and attacked her. Throughout the ordeal he threatened her with a knife and said he would kill her if she did not cooperate. The fact that Warnell did not kill the victim or inflict lasting physical injuries does not lessen the viciousness of the attack. Warnell argues, however, that it is not his nature to commit such offenses. He claims that he was in an alcoholic blackout during the incident and cannot remember what happened.

At the time of the incident, Warnell was thirty-four years old. He has no previous felony arrests. His criminal record contains five convictions in as many states for driving while intoxicated, other traffic offenses, and convictions for assault and criminal trespass in Iowa. Warnell's family and friends testified at sentencing that he was a hard-working family man. He did not finish high school but has gained expertise constructing pipelines. At the time of his arrest he was steadily employed with a construction company working at the Swan Falls dam. He argues that his alcohol and drug consumption on the night of the attack was a product of the physical and mental abuse he received from family members when he was a child and which continues to affect him as an adult.

It is undisputed that Warnell has a chronic problem with alcohol and drugs. He told the presentence investigator that he drinks beer and whiskey daily and gets drunk about five times a week. Warnell stated that on the evening of the rape, he consumed a case of beer and either a pint or a fifth of whiskey, and had taken 23 tablets of an over-the-counter medicine (ephedrine) which acted as a mild stimulant. He said that he drank that night to lessen the sting of a recent harsh encounter with his mentally abusive father. He further stated that when he took the ephedrine tablets he did not care if he lived or died. He claims that he would not have attacked the victim had he not been drinking, and that he remembered nothing about the event except "waking up" while sitting on the edge of the victim's bed and realizing he had done a terrible thing.

The district court did not disagree that intoxicants may have played a role in the crime. In the court's view, however, the evidence of premeditation disputed the idea that the rape was a rash act produced by alcohol or that it was performed during an alcoholic blackout. Warnell called the victim to make sure she was alone. He attempted to hide his identity by wearing a stocking over his face. He took a knife and flashlight with him. He appeared to know details about the victim's house and where she kept personal household items, which indicates that he may have spied on her in the past. He told the victim that she should perform his sexual requests in the same manner she performed for her husband, possibly indicating that Warnell— who was unknown to the victim—had previously become familiar with the victim's personal life.

The transcript of the sentencing hearing indicates that the court considered the sentencing goals of deterrence, retribution and rehabilitation. Warnell argues, however, that the court focused on retribution and deterrence, and gave rehabilitation short shrift. We disagree, but

even if true, such a focus would not necessarily constitute an abuse of discretion. A sentence need not serve all the sentencing goals, but may serve any of them. *State v. Koho,* 124 Idaho 194, 858 P.2d 334 (Ct.App. 1993); *Toohill,* 103 Idaho at 568, 650 P.2d at 710. The goals of retribution and deterrence by themselves may be sufficient to justify the sentence. *Koho, supra; State v. Waddell,* 119 Idaho 238, 804 P.2d 1369 (Ct.App.1991). The primary consideration in sentencing "is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end." *State v. Moore,* 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956); *Koho, supra.*

 The court stated that in its view, Warnell showed less compassion for his victim than some murder cases that had come before the court. The court imposed a long sentence and recommended that psychological counseling be given. It observed that at some point, the appropriate authorities may feel that Warnell may again be found to be trustworthy. This is consistent with Warnell's psychological evaluation. The psychologist who performed the evaluation stated that Warnell suffered from post-traumatic stress primarily because of his abusive childhood. The psychologist stated that:

> [E]motional factors, coupled with his personality disorders and substance abuse problems likely interacted to create a very unstable individual whose history is to react with either depression or aggression. Both seem driven by anger and insecurity....
>
> My impression is that Mr. Warnell is amenable to treatment.

The court fashioned a sentence which recognized that Warnell may change. By including a long indeterminate term, however, the court also recognized that Warnell may not change and society should continue to be protected. Warnell's disagreement with this approach does not make it an abuse of discretion. We will not substitute a different view of the sentence for that of the sentencing court's where reasonable minds might differ. Further, although Warnell points out that other offenders have received less severe sentences for rape, we note that some have received longer sentences. *See, e.g., State v. Wolverton,* 120 Idaho 559, 817 P.2d 1083 (Ct. App.1991). Moreover, disparity among sentences given to various defendants as punishment for similar crimes does not demonstrate an abuse of discretion. *State v. Seifart,* 100 Idaho 321, 597 P.2d 44 (1979).

Based on the foregoing, we hold that the district court did not abuse its sentencing discretion in this case. Warnell's sentences are affirmed.

LANSING and PERRY, JJ., concur.