873 P.2d 842

**Paul ROBERTS, Plaintiff–Appellant,**

v.

**BONNEVILLE COUNTY, a governmental entity, and John Does I through X, Defendants–Respondents.**

No. 19002.

Supreme Court of Idaho,
Pocatello September 1993 Term.

March 9, 1994.

Rehearing Denied May 11, 1994.

Dissenting Opinion on Denial of Rehearing by Bistline, Justice, May 11, 1994.

Thomsen & Stephens, P.A., Idaho Falls, for appellant. James D. Holman argued.

Anderson, Pike & Bush, Idaho Falls, for respondents. Blake G. Hall argued.

McDEVITT, Chief Justice.

## BACKGROUND

On the evening of August 11, 1987, the appellant, Paul Roberts ("Roberts"), attended a party with two friends, Mike McGee ("McGee") and John Schreiber ("Schreiber"). They drove to the party in Roberts' vehicle, a 1985 Toyota pickup truck. While at the par-

ty, the three consumed varying quantities of alcohol. They left the party around 11:45 p.m., intending to drive to Heise, Idaho, to attend another party. Roberts gave his keys to Schreiber, apparently because he was too tired to drive himself. Schreiber was driving the vehicle when an accident occurred at the intersection of North County Line Road and State Highway 48.

The intersection of North County Line Road and State Highway 48 occurs at a right angle forming a "T," immediately following a near ninety degree angle in North County Line Road. Schreiber, travelling at 60–65 mph toward the intersection on North County Line Road, which is marked with a maximum speed of 50 mph, saw the warning sign marking the curve only at the last moment, when McGee pointed it out to him. Schreiber, who was travelling too fast for the curve, sped uncontrolled through the intersection, rolling the truck into a wheat field bordering the highway. All three occupants were thrown from the vehicle.

Roberts suffered permanent paralysis as a result of the accident. Schreiber, who claimed full responsibility for the accident, after having registered a blood alcohol level of .12 within an hour of the rollover, sustained minimal injuries as did McGee. Roberts sued Bonneville County on April 4, 1988, alleging negligent design, construction, signing, and maintenance of the intersection where the accident occurred. Bonneville County raised the affirmative defense of contributory negligence pursuant to I.C. § 49–1404. Roberts moved for partial summary judgment striking this affirmative defense. The trial court denied Roberts' motion.

At trial, the evidence concentrated heavily upon whether the North County Line Road approaching the intersection with Highway 48 was properly marked. Roberts presented evidence that a "stop ahead" sign was not in place, and should have been, and that the curve sign should have contained a reduced speed sign. Bonneville County presented evidence that industry standard did not require a "stop ahead" sign, and, even so, one was in place at the time of the accident. In addition, industry standard did not require a posted speed on the curve sign. In support of its argument, Bonneville County introduced eyewitness testimony of the deputy who investigated the accident, testimony of the County's road sign shop foreman, Jack Parker ("Parker"), as well as sign shop log books containing entries concerning maintenance of a "stop ahead" sign at the subject intersection. Jack Parker testified that he saw the "stop ahead" sign in place on August 3, 1987. He also testified that on September 29, 1987, he replaced the same sign because it was missing. Roberts attempted to impeach the testimony of Parker whose testimony relied in part on the log books, by insinuating that the subject entries were forged. Roberts never proved forgery.

In addition to denying any negligence, Bonneville County asserted that the accident was caused solely by the negligence of Schreiber, who was legally intoxicated at the time of the accident. The trial court allowed Bonneville County to introduce a film entitled "Under the Influence," prepared by the National Safety Council, as evidence of an experiment under Idaho Rules of Evidence 402. The film depicts an experiment whereby individuals with unusually high resistance to the effects of alcohol were tested under various driving conditions. The individuals' judgments and reaction times to various driving conditions were tested prior to the consumption of alcohol and again after the blood alcohol level of the individuals had reached .10. The film then sets out the test results and quantifies specific and average levels of driving impairment attributable to the .10 blood alcohol level. Roberts made a pretrial motion to exclude the film as violative of I.R.E. 403. The trial court denied this motion, although it edited some segments of the film that the court felt might prejudice the jury.

On June 7, 1990, the jury returned a verdict finding that Bonneville County was not negligent in its design, construction, or signing of the intersection. Roberts moved for a new trial or judgment n.o.v. The trial court denied the motions.

On October 17, 1990, Roberts requested post-trial production of the original log books, which were a central subject of debate during the trial. The log books had been

returned to Bonneville County following the verdict. The trial court ordered production on November 5, 1990, to enable Roberts to have the logs forensically analyzed for evidence of forgery. The log books were boxed for delivery by Parker and inadvertently dumped in the Bonneville County landfill, apparently mistaken for garbage. Ultimately, all but two of the log books were recovered and analyzed by Roberts' expert, Dr. Throckmorton, who found no evidence that the logs had been tampered with or doctored. Meanwhile, Roberts moved for a new trial based on "newly discovered evidence," the disappearance of the two missing log books. Judge George retired before ruling on the motion, after having made initial findings of fact. The motion was heard by District Judge James C. Herndon on March 21, 1991. On April 17, 1991, Judge Herndon denied the motion.

On appeal Roberts raises the following issues:

I. Whether the trial court erred in refusing to grant Roberts' motion for partial summary judgment on the issue of imputation of negligence under I.C. § 49–1404.

II. Whether a new trial should be ordered as a result of misconduct on the part of the trial court and defense counsel.

III. Whether the trial court abused its discretion in denying Roberts' pretrial motion to exclude the videotape.

IV. Whether the trial court abused its discretion in denying Roberts' motion for a new trial based on newly discovered evidence.

## STANDARD OF REVIEW

■ On appeal, the Supreme Court will not reverse a trial court's order granting or denying a motion for new trial unless the trial court has manifestly abused the wide discretion vested in it. *Hoglan v. First Bank of Idaho*, 120 Idaho 682, 684, 819 P.2d 100, 102 (1991). While the Supreme Court must

review the evidence, it is not in a position to "weigh" it as the trial court does. *Quick v. Crane*, 111 Idaho 759, 770, 727 P.2d 1187, 1198 (1986).

## ANALYSIS

## I.

## APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF IMPUTATION OF LIABILITY UNDER I.C. § 49–1404 (NOW I.C. § 49–2417)

Roberts argues that it was error for the trial court to rule at summary judgment and later instruct the jury that any negligence on the part of Schreiber, the driver of the truck, must be imputed to Roberts, the owner of the truck, pursuant to I.C. § 49–1404.[1]

Since the jury found no negligence on the part of Bonneville County, we do not need to address this issue.

## II.

## APPELLANT'S MOTION FOR A NEW TRIAL BASED ON MISCONDUCT

Roberts' asserts that misconduct on the part of the trial court and defense counsel occurred in the context of at least three *ex parte* communications admitted to by both. The communications allegedly took place while Roberts' pretrial motion to suppress a prejudicial video tape on drinking and driving was under consideration. The record reflects that Roberts failed to raise this issue before the trial court, which precludes this Court from addressing the issue for the first time on appeal. *State v. Fisher*, 123 Idaho 481, 849 P.2d 942 (1993); *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 93, 803 P.2d 993, 999 (1991).

---

1. I.C. § 49–2417 states that:

(1) Every owner of a motor vehicle is liable and responsible for the death or injury to a person or property resulting from negligence in the operation of his motor vehicle, in the business of the owner or otherwise, by any person using or operating the vehicle with the permission, expressed or implied, of the owner, and the negligence of the person shall be imputed to the owner for all purposes of civil damages.

## III.

### APPELLANT'S PRETRIAL MOTION TO EXCLUDE THE FILM

■ Roberts next argues that the trial court erred in admitting into evidence a video tape entitled "Under the Influence: So You Think You Can Drink and Drive." Roberts contends that the tape, which purported to be a scientific test of the effects of alcohol on driving ability, was really an editorial on the immorality of drinking and driving, which unnecessarily and prejudicially misled and inflamed the jury against Roberts. We hold that the jury verdict, which recites a finding of no negligence on the part of Bonneville County, renders any error in the admission of the film harmless.

## IV.

### NEWLY DISCOVERED EVIDENCE

■ Roberts finally asserts that the trial court erred in denying his I.R.C.P. 60(b) motion for a new trial based on newly discovered evidence,[2] namely, the loss of the log books. Implicit in Robert's argument for a new trial is the assertion that Judge Herndon should have declined to rule on the motion for new trial on its merits, and granted a new trial according to I.R.C.P. 63. Rule 63 of the Idaho Rules of Civil Procedure states:

If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that the judge cannot perform those duties because the judge did not preside at the trial or for any other reason, the judge

2. I.R.C.P. 60(b) provides, in part, "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresen-

may in the judge's discretion grant a new trial.

Thus, according to I.R.C.P. 63, where a motion for new trial is heard by a successor to the trial judge, such successor may make new findings and conclusions and direct the entry of a new judgment, subject only to the limitation that, if the new judge, in his discretion, is satisfied that he cannot perform those duties for any reason, he may grant a new trial. *Anderson v. Dewey,* 82 Idaho 173, 179, 350 P.2d 734, 736 (1960). In this case, Judge Herndon determined that he was capable of performing the duty of ruling upon the motion for new trial, stating that "[t]his case is ready for decision." Judge Herndon properly exercised this duty. We now turn to a discussion of the motion for new trial.

[4] At trial, there was considerable dispute concerning the existence of a "stop ahead" sign at the intersection of North County Line Road and State Highway 48 on the night of August 11, 1987. Roberts introduced evidence, through the testimony of the three passengers of the truck involved in the accident, Roberts' father, and a resident living near the intersection, that the only sign in place on that evening was a curve sign, with no recommended speed notice. The County offered directly contradictory evidence through the testimony of the County's sign shop foreman, the deputy investigating the accident, and through log book records containing sign maintenance data entries for a "stop ahead" sign as early as 1984. The sign shop foreman, Jack Parker, testified concerning the log book entries. During his testimony, he emphatically denied having doctored the log books when questioned on the issue by Roberts' counsel. Roberts' counsel conjectured the forgery based on the alleged fact that the entries concerning the "stop ahead" sign were all at the bottom of the pages in fresh ink.[3]

tation, or other misconduct of an adverse party...."

3. Roberts' counsel claimed that he had tested the freshness of the ink of the subject entries by rubbing across the entry with a white handkerchief. He claimed that the red ink smeared onto the handkerchief, whereas the ink from other random entries tested from the same log left no

**592**

After the verdict was returned in favor of the County, Roberts moved for production of the original signing logs for the years 1984–89 in order to have the logs examined by a forensic documents analyst to see if the entries had been forged. Upon receipt of the trial court's order granting the motion, the County failed to produce the logs, claiming that they had been inadvertently thrown away. Subsequently, four of the six log books were found in the local dump, but not the two crucial logs, for 1985 and 1986, containing four suspect entries concerning maintenance of the alleged "stop ahead" sign. The specialist employed by Roberts was unable to fully analyze the one remaining log containing allegedly suspect entries, 1984, because of extensive damage.

Roberts contends that the loss of the log books constitutes newly discovered evidence, arguing that the highly suspect "loss" is an admission of guilt of forgery by conduct on the part of Parker. This evidence is crucial to the verdict, Roberts argues, because the issue of whether there existed a "stop ahead" sign at the intersection at the time of the accident was key, and the log books and Parker's testimony comprised the substance of the County's evidence on the issue. Because the credibility of the log books and Parker cannot now be seriously honored as a result of the admission, Roberts asserts, a new trial must be granted in order to flesh out the truth.

We hold that the trial court did not abuse its discretion in denying Roberts' motion for a new trial based on newly discovered evidence. The evidence does not satisfy all of the test factors applicable to a Rule 60(b)(2) motion set out by this Court:

> To obtain a new trial on the ground of newly discovered evidence it must be shown that: (1) the evidence is such as will probably change the result if a new trial is granted; (2) it has been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it is material to the issues; and (5) it is not merely cumulative or impeaching.

*Hanf v. Syringa Realty, Inc.*, 120 Idaho 364, 368, 816 P.2d 320, 324 (1991); *see also In re Estate of Freeman*, 95 Idaho 562, 567, 511 P.2d 1338, 1343 (1973).

Roberts failed to show how the newly discovered evidence, the loss of the log books, is such that it would in any manner alter the result in a new trial. Roberts asserts, but does not prove by a preponderance of the evidence, that the loss of the log books constitutes an admission of forgery and perjury on the part of Parker. Moreover, the evidence at trial overwhelmingly supports the verdict, even absent the log books, and the inadvertent loss of the log books will not significantly change the weight of the evidence.[4] The evidence at trial was undisputed that a "stop ahead" sign at the intersection in question was not required by the *Manual on Uniform Traffic Control Devices* and that failure to have such a sign would not be negligent. Nonetheless, both Sam Dye, the investigating officer on the scene of the accident, and Parker, testified that a "stop ahead" sign was in place at the intersection within one year before, during, and immediately after the accident. The evidence also established that Schreiber, who was driving while intoxicated, admitted responsibility for the accident. The weight of the evidence at trial was undeniably against Roberts, and he has failed to show that the newly discovered evidence would likely change the result. The newly discovered evidence illuminated by Roberts simply does not rise to the level required by I.R.C.P. 60(b) and the case law applying that rule.

smear. Although the logs were not admitted into evidence, the trial court ordered the logs to be taken to the jury room. In the jury room, the jury immediately attempted to obtain the same results by the same test with negative results.

4. In its memorandum decision on Roberts' I.R.C.P. 60(b) motion, the trial court found that substantial evidence supports the jury verdict independent of the controversial "stop ahead"

sign. This evidence includes the undisputed intoxication of the driver and plaintiff, the excessive speed of the vehicle, and the failure of Roberts to show "but for" causation or proximate cause in that, even if a "stop ahead" sign had been present, the accident would not have happened or that the intoxicated condition of the driver did not break the alleged causal chain.

■ Roberts further alleges that the loss of the log books constitutes fraud, warranting a new trial under I.R.C.P. 60(b)(3). We disagree. Only two of the six requested signing logs were not recovered and provided to Roberts, and the remaining four were analyzed by Roberts' expert, revealing no evidence of tampering. The inadvertent loss of two of the six requested signing logs does not satisfy Roberts' burden of proving fraud as contemplated by I.R.C.P. 60(b)(3). *See Compton v. Compton*, 101 Idaho 328, 335, 612 P.2d 1175, 1182 (1980). In *Compton*, this Court recognized that "the term 'fraud upon the court' contemplates more than interparty misconduct," stating that "such fraud will be fraud only in the presence of such tampering with the administration of justice as to suggest a wrong against the institutions set up to protect and safeguard the public." *Id.* At most, Roberts' focus is to impugn the integrity of Parker, and shroud his testimony in unsupported suppositions of perjury. Perjury of a witness is not the type of fraud giving rise to relief under I.R.C.P. 60(b). *Compton*, 101 Idaho at 334, 612 P.2d at 1181. Roberts' allegation of fraud in this case is simply insufficient to meet the requirements of I.R.C.P. 60(b) and overcome the strong public policy in favor of the finality of verdicts.

Costs on appeal to respondents. No attorney fees on appeal.

JOHNSON, TROUT and SILAK, JJ., concur.

BISTLINE, Justice, dissenting to Part II.

The majority today avoids addressing Roberts' arguments relating to the *ex parte* communications between defense counsel Blake G. Hall and Judge George, concluding that it is precluded from doing so since Roberts did not raise the issue of *ex parte* communications below.

To avoid addressing the issue of *ex parte* communications, the majority imposes upon itself a rule that is unjustified and in this case, unfair. I agree that this issue was not raised below and that generally, constitutional issues will not be considered by this Court when raised for the first time on appeal. *Oregon Shortline Railroad Co. v. City of Chubbuck*, 93 Idaho 815, 817, 474 P.2d 244, 246 (1970); *George W. Watkins Family v. Messenger*, 118 Idaho 537, 541, 797 P.2d 1385, 1389 (1990) (multiple citations omitted). Such issues may be considered for the first time on appeal, however, if such consideration is necessary for subsequent proceedings in the case. *Messmer v. Ker*, 96 Idaho 75, 78–79, 524 P.2d 536, 539–40 (1974). In my view, further proceedings in this case should ensue, for the *ex parte* communications between Mr. Hall and Judge George constitute an impermissible violation of Idaho Rule of Professional Conduct 3.5, the Code of Judicial Conduct, Canon 3 A 4, and the due process clause of the Fifth Amendment of the United States Constitution. Consideration by this Court of the *ex parte* contacts is therefore undisputedly necessary. Furthermore, reviewing this issue on appeal would not prejudice the parties any more than Roberts has been already prejudiced by the impermissible *ex parte* contacts during the trial. Finally, since the trial judge was one of the parties guilty of *ex parte* communications, it borders on unreasonable for this Court to expect Roberts to have raised this issue below.

The untoward communications between defense counsel and Judge George undoubtedly played a significant role in this case. In February of 1990, defense counsel disclosed his intention to introduce into evidence the videotape entitled, "Under the Influence: So You Think You Can Drink and Drive." In early April of 1990, Judge George somehow alerted defense counsel of his intentions to not allow the videotape to be admitted into evidence. Defense counsel thus apparently realized that he needed further evidence of the impact of alcohol on an automobile driver, and proceeded to search for and locate a witness who could testify to this issue. On May 15, 1990, the trial court announced its decision to exclude the videotape, which was rapidly followed by defense counsel's announcement of the testimony that would be presented at trial by the defense's newly retained expert witness as to the effects of drinking alcohol and driving. The trial court then granted Roberts' motion to exclude the testimony of the expert as untimely. The defense then moved for a continuance, which

the trial court denied, but the trial court appeased the defense by then reversing its earlier order and allowing the admission of the videotape into evidence.

Had the defense counsel not known that the trial court planned to exclude the videotape, it is doubtful that the expert witness would have been located by the time the trial judge disallowed the videotape. The defense therefore would not have had the expert witness at that point as leverage to encourage the trial judge to promptly reverse himself and admit the videotape.

Indeed, the admission of the videotape is highly questionable, since surely the average juror is familiar with the undeniably significant effects of alcohol on driving. The majority holds that the admission of the videotape into evidence was rendered harmless by the jury verdict of no negligence on the part of Bonneville County. However, I would hold that the trial court's obvious initial reluctance to admit the videotape into evidence indicates its prejudicial and inflammatory nature, which is enough to warrant its exclusion under I.R.E. 403. A verdict should not justify, nullify, or "render harmless" the non-quantifiable effects of prejudicial evidence.

Because of the questionable and highly improper actions on the part of defense counsel and Judge George, I would remand this cause for a new trial.

BISTLINE, Justice, Dissenting on Denial of Petition for Rehearing.

Without reiterating the reasons set forth in my dissenting opinion to the opinion in *Roberts v. Bonneville County*, 125 Idaho 588, 873 P.2d 842 (1994), it is necessary to express my continuing disagreement with the Court. It is clear to me that there is substantial reason to question the *ex parte* communications that occurred during the proceedings below and that this Court should therefore remand the cause for a new trial.