909 P.2d 637

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Peter MEDINA, Defendant–Appellant.**

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steve MEDINA, Defendant–Appellant.**

**Nos. 21406 and 21459.**

Court of Appeals of Idaho.

Jan. 2, 1996.

Review Granted April 19, 1996.

Whittier, Souza and Clark, Cht., Pocatello, for appellant Steve Medina. Robert C. Naftz argued.

Raymundo G. Pena, Rupert, and David G. Pena, Boise, for appellant Peter Medina. David G. Pena argued.

Alan G. Lance, Attorney General; Catherine Derden, Deputy Attorney General, Boise, for respondent. Catherine Derden argued.

WALTERS, Chief Judge.

Steve Medina was convicted of aggravated assault, I.C. §§ 18–901 and 18–905(b), after a jury trial and he received a unified sentence of fifteen years with a minimum period of confinement of five years. The sentence included an enhancement for the use of a firearm during the commission of a crime, I.C. § 19–2520. His brother, Peter Medina, was also convicted of aggravated assault, as a principal for aiding and abetting Steve's offense, I.C. § 18–204, and Peter Medina pled guilty to an allegation that he was a persistent violator, I.C. § 19–2514. Peter received a unified twenty-five year sentence, with a minimum period of confinement of ten years. Both defendants appeal. For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 1993, the Medina brothers and a friend, Robin Batts, spent the day in Twin Falls drinking beer and smoking marijuana. Late in the afternoon, they drove to a mobile home park in American Falls where Leonard Flores lived. The Medina brothers and Flores had a long-standing feud, and about a week prior to August 6, Flores and Steve had been in a fist fight in a local bar. According to testimony at the trial, Steve planned to retaliate against Flores on this day, and Peter and Batts agreed to assist him.

Flores was standing outside of his home with friends and a couple of children looking at a truck one of the friends had just purchased, when Batts and the Medina brothers drove up. Batts was the driver; Peter was in the front passenger seat; and Steve was in the back seat of the vehicle. As they neared Flores's trailer, Steve pointed a gun out the window. After Flores saw Peter looking at him and Steve holding a gun out the window, he ran between two trucks parked next to his residence. One of the bystanders saw Peter turn and speak to Steve, then Steve fired a shot which hit the tire of Flores's truck. As Batts and the Medina brothers fled the scene of the shooting, their vehicle struck another car. Later they stopped on a dirt road to dispose of beer cans, a cooler and the gun.

After a consolidated jury trial, Steve was found guilty of aggravated assault. He received a unified fifteen-year sentence, including an enhancement for the use of a firearm during the commission of a crime, with a five-year minimum period of confinement. Peter was also found guilty of aggravated assault, as a principal, for aiding and abetting Steve's offense. He pled guilty to a persistent violator charge. He was sentenced to a unified twenty-five year sentence, with a ten-year minimum period of confinement. A motion by Peter to withdraw his plea of guilty to the persistent violator allegation was denied by the district court. Although each defendant has appealed separately, the cases were combined for oral arguments on appeal. Given the overlap of the issues in these cases, we are issuing a joint opinion.

## II. ISSUES

Steve claims on appeal that: (1) the state failed to give timely notice of its intent to pursue the sentence enhancement charge for the use of a firearm in committing aggravat-

ed assault; (2) the district court erred by admitting evidence of prior bad acts pursuant to I.R.E. 403 and 404(b); and (3) the court abused its discretion in imposing the sentence.

Peter argues that: (1) the evidence at trial was insufficient to support the verdict against him; and (2) the district court erred in (a) admitting evidence of prior bad acts pursuant to I.R.E. 403 and 404(b), (b) denying the motion to withdraw his guilty plea to the persistent violator charge, (c) failing to provide the jury with a "Holder" instruction, and (d) allowing the use of undefined terms by the state during trial. He also contends that the court abused its discretion in imposing the sentence.

## III. DISCUSSION

### A. Sentence Enhancement Charge.

Steve argues that the state failed to give timely notice of its intent to pursue the enhancement charge pursuant to Idaho Code § 19–2520.[1] He asserts that the word "shall" in I.C. § 19–2520 requires that the state's notice of an enhancement charge be given at or before the preliminary hearing. Steve also contends that the first notice he received of the charge was through receipt of the state's Information—Part II, filed on September 30, 1993, which was several days after the September 8, 1993, preliminary hearing date.[2]

A mandatory sentence enhancement is unavailable unless the provisions of I.C. § 19–2520 are strictly followed. *State v. Pardo,* 109 Idaho 1036, 1039, 712 P.2d 737, 740 (Ct.App.1985). However, in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for the assignment of error. *Roberts v. Bonneville County,* 125 Idaho 588, 590, 873 P.2d 842, 844 (1994); *State v. Fisher,* 123 Idaho 481, 485, 849 P.2d 942, 946 (1993). The record reflects that Steve failed to raise this issue before the district court, which precludes this Court from addressing the issue for the first time on appeal.[3] *Compare, State v. Pardo, supra* (motion to dismiss for failure to comply with section 19–2520 was denied by the trial court, preserving the issue for appellate review).

### B. Prior Bad Acts Pursuant to I.R.E. 403 and 404(b).

Steve next argues the district court erred in admitting Flores's testimony whereby Flores discussed prior bad acts of Peter which allegedly contributed to the longstanding feud between Flores and the Medina brothers. The prior bad acts specifically at issue were: (1) the theft of shotguns in 1980 for which Peter was convicted, and (2) Flores's testimony that Steve had been present in the past when Peter threatened Flores with weapons. Steve asserts that general evidence of the ongoing feud between Flores and the Medinas was more than sufficient to establish common plan, lack of accident or mistake, under I.R.E. 404(b). He argues,

---

1. Idaho Code § 19–2520 states in pertinent part:
   **Extended sentence for use of firearm or deadly weapon.**—Any person convicted of a violation of sections 18–905 (aggravated assault defined) . . . Idaho Code, who displayed, used, threatened, or attempted to use a firearm or other deadly weapon while committing or attempting to commit the crime, shall be sentenced to an extended term of imprisonment. . . .
   The additional terms provided in this section shall not be imposed unless the fact of displaying, using, threatening, or attempting to use a firearm or other deadly weapon while committing the crime is separately charged in the information or indictment and admitted by the accused or found to be true by the trier of fact at the trial of the substantive crime; provided, however, that the prosecutor *shall* give notice to the defendant of intent to seek an enhanced

penalty at or before the preliminary hearing or before a waiver of the preliminary hearing, if any. . . . (Emphasis added.)

2. Peter Medina's attempt to join in this argument does not merit discussion because the enhancement charge against him for use of a firearm was dismissed by the state prior to trial.

3. The record in Peter's case, however, contains the state's notice of intent to seek the enhancement charge against Steve. This document was apparently filed in Peter's case below on August 18, 1993, prior to the consolidated preliminary hearing held in both cases on September 8. The existence of this document in the consolidated proceedings perhaps explains why no motion was pursued in Steve's case to dismiss for lack of notice under I.C. § 19–2520.

however, that evidence of the specific acts of theft and threats is barred by I.R.E. 403 and 404(b) because it falsely misled the jury by implying that he was involved in the prior acts committed by Peter, and its prejudicial impact outweighs its probative value. Furthermore, Steve contends that although the district court recognized that this testimony should not have been admitted, the court's attempt to cure the problem with a cautionary instruction was in error.

Peter also argues that the district court erred in allowing evidence of prior acts between he and Flores. Prior acts to which Flores testified and which Peter now objects include: (1) the theft of the shotguns, (2) threats with weapons; and (3) Peter's comment to Flores that he would get even with Flores for testifying against him on the theft conviction. Peter argues, as Steve does, that the probative value of this evidence does not outweigh its unfair prejudicial effect.

■ Generally, evidence of other crimes, wrongs or acts is inadmissible to show a defendant's criminal propensity or guilt of the crime charged. I.R.E. 404(b); *State v. Matthews,* 124 Idaho 806, 809, 864 P.2d 644, 647 (Ct.App.1993). However, such evidence may be admitted if offered for some purpose, other than propensity, relevant to a material issue in the case, such as the defendant's knowledge, identity, plan, preparation, opportunity, motive, intent and the absence of mistake or accident. *Id.* Though relevant, the evidence still may be excluded if the trial court concludes that the threat of unfair prejudice substantially outweighs its probative value. I.R.E. 403; *Matthews, supra.*

■ Thus, in order to admit evidence of other crimes, wrongs or acts, a two-tiered analysis is applied by the trial court. First, the evidence must be relevant to a material and disputed issue concerning the crime charged, other than propensity. Second, if the evidence is deemed relevant, the court must determine whether the probative value of the evidence is substantially outweighed

by the danger of causing unfair prejudice to the defendant. *Id.; State v. Moore,* 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991). This balancing process is within the discretion of the trial judge. *Moore, supra; State v. Abel,* 104 Idaho 865, 664 P.2d 772 (1983).

■ Whether evidence is relevant presents an issue of law. *See* I.R.E. 401 and 402; *Matthews, supra; State v. Raudebaugh,* 124 Idaho 758, 765, 864 P.2d 596, 603 (1993). Thus, in considering a trial court's decision to admit evidence of prior misconduct, the appellate court exercises free review of the trial judge's determination that the evidence was admissible under I.R.E. 404(b). *Matthews, supra.*

■ However, the lower court's conclusion that the probative value of the evidence is not outweighed by its unfair prejudice—the second part of the analysis under I.R.E. 403—is reviewed under an abuse of discretion standard. *Id.; State v. Medrano,* 123 Idaho 114, 118, 844 P.2d 1364, 1368 (Ct.App. 1992). Under that standard, the appellate court inquires: (1) whether the district court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Matthews; supra.*

■ In the instant case, Flores's testimony was relevant to prove that there was a plan to assault Flores, and that the entire incident was not an accident. The district court determined that the testimony as to earlier threats and acts of violence was relevant on the issue of motive, intent, plan, and absence of mistake or accident. The court then exercised its discretion in finding that knowledge of this long-standing feud was more probative than prejudicial. Furthermore, the court gave the jury a limiting instruction on the purpose of the testimony both before the testimony was admitted and at the end of the case.[4] We hold that the

---

4. The instruction recited:

Evidence of prior disputes between both defendants and Leonard Flores has been introduced.

Such evidence, if believed, was not received and may not be considered by you to prove that either defendant is a person of bad char-

district court did not err as a matter of law in finding the questioned evidence relevant and that the court did not abuse its discretion in concluding that the probative value of the questioned evidence outweighed the possibility of unfair prejudice.

## C. Withdrawal of Guilty Plea.

Peter challenges the district court's denial of his motion to withdraw his plea of guilty to the persistent violator allegation. Contending that he did not understand the ramifications of the plea, Peter argues that this denial was an abuse of the court's discretion. He asserts that he pled guilty to the charge because he was "confused and believed that he had to plead to the charge...." He notes that his plea change was taken at 12:04 a.m. immediately after the jury returned its verdict finding him guilty of aiding and abetting the shooting. He argues that taking the change of plea "at such a late hour was ill-advised and prejudiced ... [him]" even though the "trial court asked the right questions to justify the change of plea...." During the hearing on the motion to withdraw his plea, Peter also suggested that because one of his previous felony convictions took place when he was under the age of eighteen, it could not be counted toward the persistent violator charge.

Peter's argument essentially questioned the voluntariness of his plea. The district court recognized Peter's position, but held that Peter had knowingly, intelligently and voluntarily entered his plea. The record shows that before the district court accepted his guilty plea, Peter told the court that he

understood that because of the enhancement charge, he could receive a sentence of up to life in prison; that he discussed the charge carefully with his attorney; that he understood that he was giving up his constitutional right to remain silent, the right not to incriminate himself, the presumption of innocence, the right to have a trial by jury and the right to present any defenses to this charge. He also admitted to the three previous felony convictions.[5]

■■■ A motion to withdraw a plea of guilty is addressed to the sound discretion of the trial court, and the defendant bears the burden of proving that the plea should be withdrawn. *Griffith v. State*, 121 Idaho 371, 374–75, 825 P.2d 94, 97–98 (Ct.App.1992).[6] Upon review of the record, we hold that Peter has failed to establish that the district court abused its discretion by denying the motion to withdraw the plea of guilty to the persistent violator allegation.

## D. Holder Instruction.

Peter argues that the court erred by not providing the jury with the "Holder" instruction he requested which would have informed the jury of the difference between direct and circumstantial evidence. He claims that the state's case against him was based solely on circumstantial evidence—the key element being testimony that Peter turned and said something to his brother in the car just prior to the shot being fired. Peter asserts that without this instruction, the jury was allowed to assume that "whatever was said by [him]

---

acter or that he has a disposition to commit crimes.

Such evidence was received and may be considered by you only for the limited purpose of endeavoring to prove the defendant's opportunity, motive, intent, plan, knowledge or absence of mistake or accident.

5. Peter has not presented any legal analysis as to why the juvenile felony conviction should not be counted toward the charge of persistent violator. The persistent violator statute, I.C. § 19–2514, merely requires two prior convictions. Thus, even if the juvenile conviction was disregarded, two prior convictions remained, as admitted by Peter.

6. The state asserts that Peter Medina was required to establish a "manifest injustice" in or-

der to obtain withdrawal of the guilty plea, under I.C.R. 33(c), because he had been sentenced prior to filing his motion to withdraw his plea. However, the sentence to which the state refers was later determined by the district court to have been illegal because it set forth a separate term of incarceration for Peter's persistent violator status. *See Lopez v. State*, 108 Idaho 394, 700 P.2d 16 (1985). Because the entire original sentence was invalid *ab initio*, "sentence was not imposed until the [district] court corrected the sentence." *Id.* at 396, 700 P.2d at 18. Peter's motion was filed before the district court conducted the proceedings at which the corrected sentence was imposed. Accordingly, the manifest injustice requirement was not applicable.

... to his brother in some manner aided or assisted the crime."

The state contends that the district court properly refused the instruction because the state's case was not based entirely upon circumstantial evidence. The state points out that much of its case was based on direct evidence from Robin Batts and the witnesses at the scene of the shooting.

The question of whether the jury was properly instructed is a question of law over which the appellate court exercises free review. *State v. Jones,* 125 Idaho 477, 489, 873 P.2d 122, 134 (1994). When the state's case against the defendant rests entirely upon circumstantial evidence, an instruction is necessary to distinguish between direct and circumstantial evidence. *State v. Holder,* 100 Idaho 129, 132–33, 594 P.2d 639, 642–43 (1979). Such instruction is commonly referred to as the "Holder" instruction. The "Holder" instruction essentially advises the jury that "[i]f the evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to the defendant's innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and to reject the other which points to the defendant's guilt." IDAHO CRIMINAL JURY INSTRUCTION 203, CIRCUMSTANTIAL EVIDENCE—"HOLDER" INSTRUCTION, Comment, p. 1 (1995).

"Circumstantial evidence" produces no witnesses who saw the questioned circumstances occur. *State v. Hix,* 58 Idaho 730, 734, 78 P.2d 1003, 1004 (1938). *See also State v. Bedwell,* 77 Idaho 57, 61, 286 P.2d 641, 644 (1955). Since a non-expert witness can only testify to matters of which he has personal knowledge, I.R.E. 602, all testimony from lay witnesses is direct evidence of the facts about which they testify. IDAHO CRIMINAL JURY INSTRUCTION 203, CIRCUMSTANTIAL EVIDENCE—"HOLDER" INSTRUCTION, Comment, p. 2 (1995). Such testimony is not direct evidence of the defendant's guilt, however, if the jury must draw inferences from

such facts in order to conclude that the defendant is guilty of the crime. *Id.*

The record shows that much of the state's case against Peter was based on testimony from Robin Batts and Matt Rivera. Batts testified that he spent the day with the Medina brothers. He described how the Medina brothers discussed their plan to assault Flores, told of how the three of them drove to the Flores's trailer and of the exchange of words between the brothers just prior to the shooting, of the shooting itself, and of the events which took place after the shooting. Matt Rivera was a friend of Flores visiting him at the time of the shooting. He testified that he saw the Medina brothers exchange words in the car a few seconds before the shot was fired. We hold that the testimony of these two lay witnesses is direct evidence because they described matters of which they had personal knowledge.

We conclude that the district court did not err by denying Peter's request to provide the jury with the "Holder" instruction.

### E. Undefined Terms Used During Trial.

Peter argues that the district court allowed the state to use the terms "deadly weapon" and "drive-by shooting" without defining them during trial. He claims that the term "deadly weapon" was used by the state to portray the relationship between he and Flores to be "much different that it actually was." He also claims that the term "drive-by shooting" is associated with drug-related gang activity. Peter argues that by not defining these terms, the state was allowed to mislead and inflame the jury. He also claims that because the court allowed the jury to speculate as to the meaning of these terms, he was unfairly prejudiced.[7]

The record reflects that Peter failed to raise this issue before the district court. Consequently, this Court is precluded from addressing the issue for the first time on appeal. *Roberts v. Bonneville County,* 125 Idaho 588, 590, 873 P.2d 842, 844 (1994);

---

7. Peter seems to have overlooked the fact that the trial court gave Instruction no. 12 to the jury, which defines "deadly weapon." He also fails to acknowledge that not only the prosecutor but the attorneys for both defendants used the phrase "drive-by shooting," to describe the incident, in their arguments to the jury.

*State v. Fisher,* 123 Idaho 481, 485, 849 P.2d 942, 946 (1993).

## F. Sufficiency of Evidence to Support the Verdict.

Peter argues that there was insufficient evidence to convict him of aggravated assault, as a principal. He asserts that the state's case rested on the assumption that whatever Peter said to his brother immediately prior to the gun being fired must have somehow encouraged or assisted in the crime. He further asserts that no testimony was given as to what was allegedly said. Peter states that the district court recognized that according to Matt Rivera's testimony, an eyewitness to the shooting, it could have been either "before or after" the shot was fired that Peter said something to Steve. Peter argues that if he said something to Steve "after" the shot was fired, there is no evidence that he aided, assisted, encouraged or otherwise participated in the actions of his brother and the conviction cannot be upheld.

An appellate court will not set aside a judgment of conviction entered upon a jury verdict if there is substantial evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Reyes,* 121 Idaho 570, 572, 826 P.2d 919, 921 (Ct. App.1992); *State v. Boag,* 118 Idaho 944, 947, 801 P.2d 1295, 1298 (Ct.App.1990). The jury is accorded the right to determine the credibility of the witnesses, to weigh the evidence and to draw all reasonable and justifiable inferences. *Reyes,* 121 Idaho at 572, 826 P.2d at 921. On appeal, where a defendant stands convicted, the evidence must be viewed most favorably to the prosecution. *Id.; Boag,* 118 Idaho at 947, 801 P.2d at 1298.

An assault is an unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another; or an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent. I.C. § 18–901. Aggravated assault is an assault by any means or force likely to produce great bodily harm. I.C. § 18–905(b). Principals are defined in pertinent part by I.C. § 18–204 as "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission...." *See State v. Hickman,* 119 Idaho 366, 367, 806 P.2d 959, 960 (Ct.App.1991).

The evidence in this case of Peter's guilt is substantial. There was testimony during trial that a feud existed between Flores and the Medina brothers, consisting of threats by both Peter and Steve. Robin Batts observed Peter throughout the day of the shooting. He testified that Steve wanted to retaliate against Flores, and asked both Batts and Peter to assist him, to which they agreed. Batts further testified that both brothers gave him directions to Flores's residence and both brothers were aware of Flores's presence when they reached Flores's home. Given this testimony, we hold that substantial evidence exists in the record to support the jury's verdict.

## G. Abuse of Discretion in Imposing Sentences.

Both Steve and Peter contend that the district court abused its discretion by imposing excessive sentences. We address their arguments in turn.

Steve claims that, before imposing his sentence, the district court failed to consider or improperly considered the following factors: (1) that Steve had only one prior felony conviction; (2) that during the sentencing hearing, the state "lumped" Steve and Peter together in its arguments so it is difficult to determine to which defendant the state is referring; (3) the aggravated assault charge was a "single impulsive act in which there was no apparent design to harm anyone, rather, at most, to instill fear in an aggressive enemy;" (4) that prior to the crime, Steve's wife had died and he alone was responsible for raising their daughter; and (5) that the court believed it was compelled to impose the maximum sentence authorized for

the aggravated assault conviction pursuant to the enhancement statute, I.C. § 19–2520. He further claims that in the event that the enhancement statute is inapplicable, the five-year minimum term of confinement is too harsh.

Peter argues that the court abused its discretion by imposing upon him a minimum term of confinement of ten years which is twice that of the fixed term Steve received for being the actual shooter. He argues that given his minimal participation in the shooting and his ability to be rehabilitated, the sentence is excessive.

When such a challenge to a sentence is presented on appeal, we review the sentence for an abuse of the trial court's discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). We conduct an independent examination of the record, giving attention to the nature of the offense and the character of the offender. *State v. Young*, 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991); *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App. 1982). The reasonableness of the term of confinement chosen by the sentencing court must be measured against the sentencing goals of protecting society, deterrence, rehabilitation and retribution. *State v. Espinoza*, 127 Idaho 194, 196, 898 P.2d 1105, 1107 (Ct. App.1995); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

The minimum period of confinement specified in Steve's sentence and in Peter's sentence, (five and ten years, respectively) is treated as the term of confinement for purposes of appellate review. *State v. Kysar*, 116 Idaho 992, 999, 783 P.2d 859, 866 (1989); *State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). We will find that a sentence was an abuse of the trial court's discretion only if, in light of the governing criteria, the sentence was excessive under any reasonable view of the facts. *State v. Small*, 107 Idaho 504, 505, 690 P.2d 1336, 1337 (1984). As we noted in *Toohill*, sentencing decisions cannot be made with precision. Therefore, where reasonable minds might differ as to the propriety of the term of confinement, the discretion vested in the sentencing court will be respected. *State v. Admyers*, 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App.1992); *Toohill*, 103 Idaho at 568, 650 P.2d at 710.

The record clearly shows that the court considered Steve's presentence investigation report and all comments made both by him and his counsel. In addition, the court found this to be "a violent offense, an attempted drive-by shooting," and rejected Steve's contention that his actions were not planned and that there was no intent to hurt anyone. The court then discussed the objectives of sentencing, focusing especially on punishment, deterrence and the protection of society. During its discussion of Steve's rehabilitation, the court made the following comments:

> I do not certainly believe you are a fit candidate for probation, nor does the presentence investigator.

> I'm also considering your rehabilitation. I don't think you are a … lost soul. But you are getting close to being one. You are getting real close to being one.

> And if I wasn't going to consider your rehabilitation I'd throw the book at you and just give you a fixed term of 20 years….

> But I think you can be rehabilitated. But it's going to take a jolt to get your attention, nobody's got it yet.

In light of the nature of the offense and the character of the offender, and taking into consideration the objectives of sentencing, we conclude that the sentence imposed on Steve was not an abuse of the district court's discretion. Furthermore, we find no merit to Steve's argument regarding the enhancement statute because the statute applied in this situation and the court appropriately considered its effect when imposing Steve's sentence.

The record is clear that the court also considered Peter's ability to be rehabilitated and his participation level in the crime. However, we do not find convincing Peter's argument that the sentence imposed upon him was excessive when compared with the lesser sentence given to his brother who

actually shot at the victim. In *State v. Seifart*, 100 Idaho 321, 597 P.2d 44 (1979), the Supreme Court stated that the mere fact that there is a disparity of sentences between multiple defendants involved in the same criminal activity or between different defendants who have committed similar crimes does not establish excessiveness of the sentence as to any particular defendant. *Seifart*, 100 Idaho at 323, 597 P.2d at 46; *State v. Warnell*, 124 Idaho 729, 733, 864 P.2d 175, 179 (Ct.App.1993). The Court also held that so long as the sentence is within the statutory maximum, the court will not exercise its supervisory powers to inquire into the propriety of a sentence, even when that sentence creates a disparity with the sentences of co-defendants. *Seifart*, 100 Idaho at 324, 597 P.2d at 47.

Here it is apparent that the disparity resulted from the difference in the two brothers' criminal records. While Steve had only one prior felony conviction, Peter had been convicted of at least two felonies as an adult and had been arrested for at least six felonies as a juvenile. He had been released on parole from the prison only two weeks before the instant offense. His minimum term included a five-year enhancement for his status as a persistent violator pursuant to I.C. § 19–2514. After reviewing the records in this case, we conclude that there was sufficient reason for the disparity in the sentences.

The sentences imposed by the district court were not excessive and there was no abuse of discretion committed by the district court. The sentences are affirmed.

**H. Cumulative Error.**

Finally, Peter submits that even if each of the errors he has asserted are insufficient, standing alone, the cumulative effect of the errors deprived him of a fair trial. He further argues that his case should be remanded back to the district court for a new trial. While this Court has recognized the doctrine of cumulative error, *State v. Larsen*, 123 Idaho 456, 459, 849 P.2d 129, 132 (Ct. App.1993); *State v. Campbell*, 104 Idaho 705, 719, 662 P.2d 1149, 1163 (Ct.App.1983), a necessary predicate to application of the doctrine is a finding of error in the first instance. *State v. Blackstead*, 126 Idaho 14, 23, 878 P.2d 188, 197 (Ct.App.1994); *Reynolds v. State*, 126 Idaho 24, 32, 878 P.2d 198, 206 (Ct.App.1994). As discussed above, we have reviewed each of the alleged errors and the record as a whole and have concluded that the district court committed no error. Thus, there can be no cumulative error.

## IV. CONCLUSION

The judgments of conviction and sentences imposed, in each case, are affirmed.

Judges LANSING and PERRY, concur.