983 P.2d 233

STATE of Idaho, Plaintiff–Respondent,

v.

Keith Allen LOVELASS, Defendant–Appellant.

No. 24404.

Court of Appeals of Idaho.

July 23, 1999.

David A. Frazier, Coeur d'Alene, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen, argued.

SCHWARTZMAN, Judge.

A jury found Keith Lovelass guilty of possession of a controlled substance, methamphetamine, in violation of I.C. § 37-2732(c)(1). On appeal, Lovelass argues that his conviction should be reversed for the following reasons: (1) the trial judge abused his discretion by questioning Lovelass in the jury's presence; (2) the prosecutor engaged in misconduct; and (3) trial counsel rendered ineffective assistance. Alternatively, Lovelass argues that if none of the preceding errors constitute reversible error, the totality of the errors require reversal of his judgment of conviction pursuant to the cumulative error doctrine. For the reasons stated below, we affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 11:00 p.m. on February 3, 1997, Coeur d'Alene patrol Officer Patrick

Sullivan was driving northbound on Fifteenth Street when he observed a Chevrolet Camaro driving southbound toward him. The vehicle had no front license plate and the driver's window and rear window were covered with frost. Officer Sullivan stopped the vehicle for these violations and discovered that Lovelass was the driver.

Officer Sullivan approached Lovelass and asked him for his registration, driver's license and proof of insurance. The officer discovered that Lovelass had a warrant outstanding for his arrest. Lovelass was arrested and pursuant thereto, a search of the Camaro was conducted by Officer Sullivan and Coeur d'Alene Police Officer Doug Demetre. During the course of the search, Officer Sullivan found silver spoons, a steak knife and a black measuring spoon on the back seat and floorboard of the passenger's side of the Camaro. He also found a small piece of plastic containing a white substance on the center console next to the gearshift and retrieved four syringes from underneath the dashboard. Subsequent testing confirmed that the white substance was methamphetamine.

On April 16, 1997, a criminal information was filed charging Lovelass with felony possession of a controlled substance (methamphetamine), I.C. § 37–2732(c)(1). Lovelass entered a plea of not guilty and a jury trial was held August 5–6, 1997. Following closing argument, the jury began its deliberations. After a few hours, the jury foreman sent a note to the judge informing him that the jury was split eleven to one in favor of guilt. The foreman asked how the jury should proceed. The judge informed the attorneys that he would tell the jury to review instruction number twelve[1] and continue deliberations. The attorneys agreed and the jurors were so informed. Shortly thereafter, the jury returned a verdict finding Lovelass guilty of possession of a controlled substance. Lovelass appeals.

1. Instruction 12 informed jurors not to make a decision before deliberating and consulting with one another. The instruction further advised jurors to decide the case for themselves after consulting with other jurors, but not to surrender their honest opinions.

## II.

## ANALYSIS

### A. The Trial Judge Did Not Commit Fundamental Error By Questioning Lovelass In The Presence Of The Jury

#### 1. Court's questioning

During the trial and in the presence of the jury, the trial judge exercised his discretion to interrogate Lovelass[2] pursuant to Rule 614(b) of the Idaho Rules of Evidence. Rule 614(b) provides that "[t]he court may interrogate witnesses, whether called by itself or by a party." Lovelass argues that the trial judge exceeded his I.R.E. 614(b) authority and abused his discretion by questioning Lovelass in an accusatory manner in the jury's presence. To understand Lovelass's challenge to the court's questioning, it is necessary to evaluate the questions posed by the court in the context of Lovelass's and Officer Sullivan's testimony.

Lovelass testified that at the time the Camaro he was driving was pulled over by Officer Sullivan, he had possessed the car for five minutes and was unaware of the presence of drugs therein. According to Lovelass, he had agreed to exchange his Eagle for Cal Lane's Camaro and he was finalizing this agreement the night of his arrest. Lovelass also testified that he had possessed the Camaro between Thanksgiving and Christmas, but that Lane had taken the vehicle back before Christmas. On direct examination by the prosecutor, Officer Sullivan testified with regard to the vehicle's contents at the time of Lovelass's arrest as follows:

Q Officer, were there any other items or did you observe anything else about the interior of this vehicle that drew your attention when you conducted your search?

A Yes, there was.

Q What was that?

A There was a large amount of things inside the vehicle. It was full.

2. The trial judge also interrogated a number of other witnesses who testified at trial.

Q What do you mean?

A There was [sic] all different kinds of things. There were stereo components, tools, clothes, [a] big box full of cassette tapes.

Q By tools, what do you mean?

A Tools, hand tools, not anything large, but crescent wrenches, socket sets, and screwdrivers, hammers, and those type of things.

Q Tools one would use to work on an automobile?

A Yes.

Q As opposed to power tools?

A Correct.

On cross-examination, the prosecutor questioned Lovelass about his employment as an automobile mechanic from December 1996 through February 1997. Lovelass testified that he worked as an auto mechanic sporadically throughout this period.

Q Well, let me just ask you this, Mr. Lane (sic): How is it that you can perform these automotive repairs on these vehicles without that Camaro when your tools were scattered all over the Camaro?

A They weren't in the Camaro.

Q Oh. So is Officer Sullivan lying when he testifies that the tools were all over the Camaro, the mechanical tools?

A No, he wasn't.

On redirect examination, defense counsel clarified:

Q The tools that were found in the back of the Camaro, were those yours?

A Yes, they were.

Q Okay. Why did you put them in the Camaro?

A Because we took them out, we cleaned out the Eagle, and just throwed [sic] the stuff in Cal's station wagon and took it and throwed [sic] it in the hatch of the Camaro.

Q Were those your only tools?

A No.

Q You had other tools to work with?

A Yes. I have two sets of tools, yes.

At the conclusion of Lovelass's testimony, the trial judge engaged Mr. Lovelass in the following colloquy:

Q I'm going to exercise my 614 prerogative. I'm a little lost. Perhaps my notes are incorrect or perhaps there's too much noise. Maybe I didn't hear you, but on cross examination by Mr. Baughman you testified that the—your tools were not in the Camaro?

A No, I did not. They were my tools.

Q That's not what you—and now you say they were, but you're saying—in answer to Mr. Baughman's question, you did not tell us that your tools were not in the Camaro that night?

A I told him that they were.

Q Well, I'll leave that up to the jury to determine or recall what his testimony was on cross examination by Mr. Baughman.

Mr. Baughman, do you wish to further recross now or not?

A [Mr. Baughman] I have nothing in light of the court's questions.

At the conclusion of Lovelass's testimony, the jurors were excused and the court made the following statement with respect to his questioning of Lovelass:

In fairness, I'm going to request that our court reporter sometime soon when she has a chance, go back and review the cross examination of Mr. Lovelass by Mr. Baughman. My notes state these tools were not in the Camaro on February 3. That is my recollection. That is what I wrote down. If I am incorrect, I will so advise the jury of the fact that I mistakenly iterated the evidence. But that's my recollection, that is what I have down.

Mr. Baughman: If you are correct, will you so advise the jury?

The Court: No. I'll just leave it up to them. I just told you that that's what my notes show and I said in front of the jury. They will have to refresh their own memories.

So, if you'd do that, madam clerk, I would appreciate it.

It does not appear from the record that the issue was ever raised again or revisited dur-

ing the trial by the judge, defense counsel or the prosecutor.

■ In *Milton v. State,* 126 Idaho 638, 888 P.2d 812 (Ct.App.1995), this Court elucidated the permissible scope of judicial questioning pursuant to I.R.E. 614. Such questioning cannot express approbation for or prejudice toward one party. *Id.* at 642, 888 P.2d at 816.

> Any implication of the court's opinion or impression of the case, whether real or imagined by the jury, may influence the jury in its deliberation on the ultimate question of guilt. There is also a risk that the jury will attach undue significance to the subject matter of the court's questions, for if the court thinks the issue important enough to inquire further of the witness, why should not the jury?

*Id.* A court's questioning pursuant to Rule 614 is necessarily limited to clarification of evidence, controlling the presentation of evidence, the prevention of undue repetition of testimony, and to limit counsel to evidentiary rulings. *Id.* Subsection (c) of Rule 614 provides that a defendant may object to a court's questioning either "at the time of interrogation or at the next available opportunity when the jury is not present." No objection was ever made by Loveless to the court's questioning. Where a defendant fails to voice such an objection at trial, however, this Court will only review a judge's questioning for fundamental error. *See, e.g., State v. Gray,* 129 Idaho 784, 798, 932 P.2d 907, 921 (Ct.App.1997) ("A fundamental error may be reviewed on appeal even absent a timely objection.").

■ Lovelass argues that the court's questions constituted an attempt to impeach him and because neither an objection nor jury instruction could remove the prejudice resulting therefrom, the questioning constitutes fundamental error that requires reversal of his conviction. Fundamental error has been defined as error that: "(1) goes to the foundation or basis of a defendant's rights, (2) goes to the foundation of the case, or (3) takes from the defendant a right which was essential to the defendant's defense which no court could or ought to permit the defendant to waive." *State v. Babb,* 125 Idaho 934, 940, 877 P.2d 905, 911 (1994), *citing State v. Knowlton,* 123 Idaho 916, 918, 854 P.2d 259, 261 (1993). This doctrine, at least in Idaho, is grounded in the notion that "the obligation of the state to see that defendant receive a fair trial is primary and fundamental." *State v. Haggard,* 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). Accordingly, "[i]n case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial." *Id.*

Generally, a trial court's abuse of discretion in admitting evidence is a trial error that does not go to the foundation of a defendant's case or take from a defendant a right which was essential to his defense. *State v. McAway,* 127 Idaho 54, 60–61, 896 P.2d 962, 968–969 (1995); *State v. Bingham,* 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). This generalization does, however, have its exceptions. *See, e.g., State v. Walters,* 120 Idaho 46, 58–59, 813 P.2d 857, 869–70 (1991) (Boyle, J., specially concurring) [3] (Admission of expert's opinion that the defendant was guilty of arson, without objection, contravened the defendant's right to receive a fair trial and therefore constituted fundamental error.); *Haggard,* 94 Idaho at 251–52, 486 P.2d at 262–63 (Prosecutor's cross-examination of defendant without objection, which revealed that defendant did not testify at the preliminary hearing, violated defendant's privilege against self-incrimination and constituted fundamental error.). Under the fundamental error doctrine, each case will of necessity stand on its own merits. Out of the facts in each case will arise the law. *Smith v. State,* 94 Idaho 469, 475 n. 13, 491 P.2d 733, 739 n. 13 (1971), *overruled on other grounds by Rodriguez v. State,* 122 Idaho 20, 830 P.2d 531 (1992).

We do not find that the court's questioning of Lovelass constitutes fundamental error. The trial judge here questioned several prosecution and defense witnesses throughout the

---

**3.** In *Walters,* the concurring opinion was joined by two other Justices, and therefore represented a majority view of the Court.

trial; Lovelass was not singled out. It appears from the record that the court's purpose in questioning Lovelass was to *clarify* a perceived inconsistency between Lovelass's testimony on direct and cross-examination regarding the presence of tools in the Camaro. Notwithstanding, the uniformity of the court's involvement in questioning both prosecution and defense witnesses assuages the possible perception of prejudice or bias created by the court's questioning of Lovelass.

Finally, the trial court instructed the jury as follows:

> If during the trial I said or did anything which suggested to you that I am inclined to favor the claims or position of any party, you will not permit yourself to be influenced by any such suggestion. I did not express nor intend to express, nor did I intend to intimate, any opinion as to which witnesses are or are not worthy of belief; what facts have or have not been established; or what inferences should be drawn from the evidence. If any expression of mine seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it.

Federal courts have deemed such an instruction under similar circumstances to be sufficient to correct any errors in a court's interrogation of a witness. *See, e.g., United States v. Mizell,* 88 F.3d 288, 297–98 (5th Cir.1996) (Where the trial judge's interrogation of an expert witness was aimed at eliciting clarifying testimony, any error in questioning was corrected by the court's instruction that the jury disregard any statements or actions indicating that he had an opinion on the issues in the case and decide the case based on their own findings of fact.); *United States v. Winstead,* 74 F.3d 1313, 1319–20 (D.C.1996) (The trial judge's instruction to the jury to disregard anything he said that may have expressed an opinion as to the facts or conveyed how he believed the case should be decided, coupled with follow-up testimony presented to the jury, were sufficient to overcome any error in the court's questioning.); 29 CHARLES

ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6235, at pp. 35–36 & n. 47 (1997) ("Prejudice sometimes can be minimized through jury instructions . . . .").

■ Under these circumstances, although we *caution*[4] against a trial court engaging in questioning which may give the impression of bias or prejudice, or imply that the judge believes or disbelieves a particular witness, we find that the trial judge's attempt to clarify Lovelass's testimony pursuant to I.R.E. 614 did not rise to the level of a prosecutorial act. *See Milton, supra,* 126 Idaho at 642–43, 888 P.2d at 816–17. Furthermore, any potential misperception would have been cured in this case by the trial judge's curative instruction to the jury. Accordingly, the trial judge's questioning did not constitute fundamental error requiring vacation of Lovelass's judgment of conviction.

### 2. Prosecutor's comments following court's questioning

■ Lovelass also challenges the prosecutor's comment, "I have nothing in light of the Court's questions." This comment followed the court's questioning of Lovelass and was in response to the court offering the prosecutor an opportunity to further examine Lovelass. Lovelass asserts that the prosecutor's statement suggested an alliance between the prosecutor and the court and thus constituted a violation of his rights. For this proposition Lovelass relies on *United States v. Frederick,* 78 F.3d 1370 (9th Cir.1996). In *Frederick,* the prosecutor in closing argument stated: "The Government and the Judge will be asking you to consider all of the evidence in making your decision." *Id.* at 1379. In evaluating the propriety of this comment, the Ninth Circuit Court of Appeals concluded that it constituted a serious violation of the defendant's rights because it suggested an alliance between the court and the prosecutor and implied that defense counsel was asking the jury to disregard the evidence.

---

**4.** A judge should steer clear of questioning that may be perceived as favorable to one side or the other. In case of doubt, it is far better for the

trial judge to err on the side of abstention from intervention. *Winstead,* 74 F.3d at 1319.

The prosecutor's comment here simply indicated that he had no additional questions for Lovelass. Although the prosecutor should have simply responded that he had no further questions, his response did not suggest an alliance between the court and the prosecution. Thus, we find no fundamental error in this comment, which was not objected to by defense counsel at trial.

**B. The Prosecutor's Statements Did Not Constitute Fundamental Error Requiring The Vacation Of Lovelass's Judgment Of Conviction**

 As a preliminary matter, we *emphasize* that the acts of prosecutorial misconduct which Lovelass challenges on appeal were never objected to at the trial level. When a party fails to preserve an issue for appeal via a timely objection, the issue will only be reviewed and reversed on appeal if it constitutes fundamental error. *State v. Mac-Donald*, 131 Idaho 367, 371–72, 956 P.2d 1314, 1318–19 (Ct.App.1998); *State v. Gray*, *supra*. Prosecutorial misconduct rises to the level of fundamental error only if the acts or comments constituting the misconduct are so egregious or inflammatory that any ensuing prejudice cannot be remedied by a curative jury instruction. *State v. Smith*, 117 Idaho 891, 898, 792 P.2d 916, 923 (1990). We address Lovelass's challenges to the prosecutor's cross-examination of defense witnesses and to statements made by the prosecutor during closing argument in turn.[5]

**1. Cross-examination**

 During cross-examination, the prosecutor asked Lovelass and his wife Rhonda whether Officer Sullivan was lying when he offered testimony contrary to the Lovelasses' version of events on the night of their arrest. The prosecutor also asked Lovelass whether his wife was lying when she testified that the only time she had seen Lovelass driving the Camaro was on the day of his arrest. Lovelass asserts that this questioning deprived

him of a fair trial because the issue of credibility, which is reserved to the jury, was usurped. *State v. Allen*, 123 Idaho 880, 853 P.2d 625 (Ct.App.1993), *overruled on other grounds by State v. Gomez*, 126 Idaho 83, 878 P.2d 782 (1994). Lovelass further argues that the prosecutor's questioning was purposefully "calculated to inflame the minds of jurors and arouse passion or prejudice against the defendant, or [were] so inflammatory that the jurors may [have been] influenced to determine guilt on factors outside the evidence." *State v. Babb*, 125 Idaho 934, 942, 877 P.2d 905, 913 (1994). For these reasons, Lovelass argues that his conviction should be set aside.

Lovelass essentially challenges the propriety of the prosecutor asking lay witnesses to comment upon the veracity of other witnesses. Our Court addressed the propriety of eliciting such testimony in *Reynolds v. State*, 126 Idaho 24, 30–31, 878 P.2d 198, 204–05 (Ct.App.1994). In *Reynolds*, the petitioner filed an application for post-conviction relief alleging that he had been prejudiced by trial counsel's failure to object to the prosecutor's solicitation of witness opinions and testimony regarding the victim-witness's credibility. Defense counsel had also asked the victim's mother whether she believed the victim and failed to object when the prosecutor asked an adult friend of the victim whether she believed the victim. This Court concluded that although lay witnesses should not be permitted to testify as to matters of credibility, it is difficult to establish prejudice resulting from such testimony; the fact that a lay witness testifies for a party generally implies the witness's belief in that party's claims. Moreover, the weight jurors will give to credibility opinions by lay witnesses does not compare to the weight jurors accord similar testimony by experts, who are perceived as neutral, detached parties with little or no stake in the litigation. This perception of neutrality is compounded by the expert's special knowledge or training, which gives the expert's

---

5. Lovelass bolsters his claim of prosecutorial misconduct with cites to two other cases involving the same prosecutor engaging in similar misconduct. *See State v. Brown*, 131 Idaho 61, 68–71, 951 P.2d 1288, 1295–98 (Ct.App.1998) (in which the same prosecutor's misconduct was

deemed harmless); *State v. Vandenacre*, 131 Idaho 507, 511–12, 960 P.2d 190, 194–95 (Ct.App. 1998) (in which the same prosecutor's question was deemed improper following a timely objection although no reversible error was found).

opinions of credibility greater weight in the minds of jurors than such opinions by lay witnesses.

Here, the prosecutor asked Lovelass and his wife to comment upon the truthfulness of Officer Sullivan's testimony and also asked Lovelass to comment upon the truthfulness of his wife's testimony. Although an objection to such questioning certainly could and generally should be sustained on the grounds that it is argumentative or invades the province of the jury, *Reynolds, supra,* we do not find that the line of questioning was so inflammatory or prejudicial that the jurors may have been influenced to determine Lovelass's guilt on the basis of factors outside the evidence. Thus, although improper, the prosecutor's questions do not constitute fundamental error.

### 2. Closing argument

Lovelass claims a number of instances of prosecutorial misconduct in closing argument. In closing argument, both the prosecutor and defense counsel "are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom." *State v. Priest,* 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct.App.1995). This includes the right to identify how, from the party's perspective, the evidence confirms or calls into doubt the credibility of particular witnesses. *Id.* However, it is improper for a prosecutor to express a personal belief or opinion regarding the truth or falsity of any testimony or evidence or as to the guilt of the defendant. *Id.* It is in accordance with these standards that we evaluate Lovelass's claims of prosecutorial misconduct in closing argument.

### a. Abrogation of beyond a reasonable doubt standard

In closing argument, the prosecutor advised the jury:

In order for you to find the defendant not guilty, you're going to necessarily have to call Officer Sullivan a liar. You're going to necessarily have to abide by the defendant's testimony that Officer Sullivan was lying. That's the only way because the defendant took the stand himself and told

you that Officer Sullivan was lying; that Officer Sullivan committed perjury; that Officer Sullivan planted evidence on him. The prosecutor further informed the jury:

You're going to have to—in order to find that reasonable doubt we were talking about to justify an acquittal, you're going to have to find this man [Lovelass] believable. And everything he said to you folks, and everything this man said, he fabricated, and all the evidence fabricated.

Lovelass argues that these statements abrogated the beyond a reasonable doubt burden of proof by informing the jury that acquittal would only be proper if *everything* Lovelass said was true. Thus, Lovelass asserts that these comments deprived him of a fair trial, went to the foundation of his case, and took from him a right which was essential to his defense.

While Lovelass is correct in arguing that it is not necessarily true that the jury would have to find *everything* Lovelass said to be true and *everything* Officer Sullivan said to be false in order to acquit him, the prosecutor's arguments were not so egregious or inflammatory that they abrogated the beyond a reasonable doubt standard. Any possible prejudice flowing from the prosecutor's exaggerations could have been remedied by a curative admonition from the court. *State v. Smith, supra,* 117 Idaho at 898, 792 P.2d at 923. Although the prosecutor's comments were not objected to so that a curative admonition could be given, the jury was properly instructed that it was the state's burden to prove Lovelass's guilt beyond a reasonable doubt. The jury was also instructed that arguments advanced by counsel do not constitute evidence which may be considered in determining whether the state has met its burden of proof. Therefore, although the prosecutor's comments were not completely accurate, they do not constitute fundamental error.

### b. Expression of personal belief in Lovelass's guilt

Lovelass next argues that the prosecutor improperly expressed his personal belief in Lovelass's guilt during closing argu-

ment. The statements at issue, in context, are as follows:

> Ladies and gentlemen, you're privileged today. It doesn't happen very often, but you got to see full-fledged perjury. You got to see somebody lying on more than one occasion; some not quite as obvious as other. Some of them blatantly obvious like, "Those aren't my tools," and then changed his testimony. You're going to have to—in order to find that reasonable doubt we were talking about to justify an acquittal, you're going to have to find this man [Lovelass] believable. *And everything he said to you folks, and everything this man said, he fabricated, and all the evidence fabricated.*

> *I'm not afraid to stand here and tell you that the defendant is guilty of possession of methamphetamine.* All I'm asking you to do, just as I indicated I would, is to follow those jury instructions. You'll find him guilty, too. The judge is going to give you a verdict form, and it will say something on it, "We, the jury, find our verdict as follows." You'll have one of two choices. You'll make a mark on it and have the presiding juror sign it. Guilty of possession of methamphetamine or not guilty.

> When you get in there, vote for your jury foreman, look at your evidence, if you wish; re-read the jury instructions, if you wish; vote for your jury foreman, mark it Guilty, sign it, and let's go home.[6]

(Emphasis added.).

■ Here, the issue is whether the prosecutor's comments went beyond fair comment on the evidence and traversed into the territory of the improper through the expression of his own personal belief or opinion with respect to witness credibility and Lovelass's guilt. A prosecutor has considerable latitude in closing argument and is entitled to discuss the evidence and inferences and deductions

arising therefrom. *State v. Porter,* 130 Idaho 772, 786, 948 P.2d 127, 141 (1997).

Although we are troubled by the prosecutor's less than artful comments, they appear to fall within the broad range of fair comment on the evidence rather than express a personal belief. At the very least, these statements do not constitute fundamental error.

### c. Arguing facts not in evidence

■ Finally, in closing argument the prosecutor stated that Lovelass had contradicted himself with regard to the presence of tools in the Camaro at the time of his arrest and that Rhonda Lovelass admitted she told Officer Sullivan that Lovelass was just a friend.[7] Lovelass asserts that because these statements were untrue, the prosecutor engaged in misconduct by arguing facts not in evidence for the purpose of inflaming the minds of jurors and arousing their prejudices or passions against him such that they would be influenced to find him guilty on the basis of factors outside the evidence. *See State v. Donohoe,* 126 Idaho 989, 895 P.2d 590 (Ct. App.1995); *State v. Ames,* 109 Idaho 373, 707 P.2d 484 (Ct.App.1985).

Our review of the record reveals that although the prosecutor's comments did misstate the evidence to a degree, these deviations were not significant enough to have a meaningful impact on the outcome of the trial. Furthermore, the prosecutor prefaced his closing argument by informing jurors that if his representation of the facts differed from their recollection, the jurors should rely upon their own memory of the facts. Thus, we conclude that the prosecutor's comments, although inaccurate, did not constitute fundamental error and were therefore waived by counsel's failure to object at trial.

---

6. Lovelass does not specifically challenge this last statement by the prosecutor and it appears here solely to give context to the statements Lovelass does challenge. Therefore, we express no opinion as to its propriety.

7. The perceived contradiction in Lovelass's testimony regarding the tools, as discussed *supra,*

was clarified on redirect examination. In addition, Rhonda Lovelass never testified that she informed Officer Sullivan she and Keith Lovelass were friends. It was Officer Sullivan who testified that Rhonda Lovelass told him she and Keith Lovelass were just friends.

### C. Defense Counsel Did Not Render Constitutionally Ineffective Assistance By Failing To Object To Improper Questions Posed By The Prosecutor

■ Lovelass next argues that trial counsel was ineffective for failing to object to questions "eliciting opinions as to the credibility of Officer Sullivan." Lovelass maintains that because such inquiries of lay witnesses are improper, his trial counsel's failure to object constitutes deficient performance. Moreover, given the paucity of evidence presented at trial, Lovelass argues there is a reasonable probability that proper objections would have resulted in cessation of the questioning and exclusion of the testimony, and consequently, a different outcome.

■ Review of an attorney's performance on direct appeal from a judgment of conviction is permissible where an ineffective assistance claim is contingent upon the failure of counsel to object to evidence at trial. *See, e.g., State v. Aspeytia,* 130 Idaho 12, 936 P.2d 210 (Ct.App.1997) (Ineffective assistance of counsel claims which hinge on trial counsel's failure to make objections during trial may be addressed on direct appeal because the transcript provides a sufficient record to permit review.). In such an instance, a defendant must demonstrate *both* that trial counsel's performance was deficient and that such deficiency was prejudicial to the case. *State v. Row,* 131 Idaho 303, 312, 955 P.2d 1082, 1091 (1998).

During the prosecutor's redirect examination of Rhonda Lovelass, the following exchange took place:

[Mr Baughman]: If Officer Sullivan under oath testifies that you told him these very things, would he be lying?

A: As far as I'm concerned, yes.

. . . .

Q: So you would admit then, wouldn't you, Mrs. Lovelass, that are [sic] the most biased witness this jury will hear from?

Similarly, during the prosecutor's cross-examination of Keith Lovelass, the following exchange took place:

Q: Mr. Lovelass, do you mean to convince this jury that a seventeen-year veteran is going the [sic] risk his career over a drug possession by committing perjury?

A: I'm not saying anything. I'm saying we weren't separated, and if he said we were, he must be lying or been lied to.

Q: Is it your testimony that Officer Sullivan is lying when he testifies that that methamphetamine was sitting right on the console right by the shifter in plain view?

A: I don't know.

Q: Is it your testimony that Officer Sullivan is lying when all of your legal documents come out of the console that's been admitted into evidence?

A: No, he would be telling the truth then.

Q: Okay. Is it your testimony that Officer Sullivan was lying when he testified that the license plates to yet another vehicle belonging to your mother were found in the back under the tools?

A: No.

Q: Is it your testimony that Officer Sullivan is lying when he found the syringe cap in your pocket?

A: No, there wasn't one there.

Q: Excuse me?

A: There wasn't one there.

Q: So is it your testimony he was lying about that?

A: All I know is there wasn't one there.

Q: Excuse me?

A: There was not one there.

Q: That wasn't my question, Mr. Lovelass. My question is: Is it your testimony that Officer Sullivan was lying about that?

. . . .

Q: So then it's your testimony that Officer Sullivan was lying when he recognized track marks on our [sic] arm?

A: I don't know if he was lying. I think he was mistaken.

Q: Was your wife also lying when she testified that she had never seen you drive this Camaro before other than that day?

A: No. I don't know what she testified to as far as that goes.

Lovelass argues that if defense counsel had objected to the prosecutor's credibility queries, the objection would have been sustained. On this point, we again find our decision in *Reynolds, supra,* to be instructive.

Although the questions posed by the prosecutor were argumentative, they hardly qualify as improper vouching. While *Reynolds* clarifies that lay witnesses should not be permitted to testify as to the credibility of other lay witnesses, the issue in *Reynolds* involved questions which sought to bolster the victim's credibility. Here, the prosecution's questions were designed to require Lovelass and his witness to explain why their testimony contradicted that of Officer Sullivan. While an objection may well have been sustained if defense counsel had objected to the argumentative nature of the questions, the prosecutor could have rephrased the questions and pursued the same line of inquiry. Thus, trial counsel's failure to object to the prosecutor's examination does not constitute such ineffective assistance of counsel that sufficient prejudice has resulted to give Lovelass a right to relief. *Compare Aspeytia* and *Reynolds, supra.*

### D. The Cumulative Error Doctrine Does Not Require This Court To Set Aside Lovelass's Judgment of Conviction

 Lovelass argues that if the errors alleged above do not independently justify setting aside his judgment of conviction, the cumulative effect of the errors does justify vacation of his judgment of conviction. Lovelass maintains that when the evidence presented against him is viewed as a whole, it is clear that "an overwhelming case against [him] was not established." Given the paucity of evidence against him, the jury was required to draw inferences to reach the conclusion that he was guilty of the charged offense. Under these circumstances, Lovelass argues that cumulatively, the trial errors operated to deny him a fair trial. *See State v. Campbell,* 104 Idaho 705, 719, 662 P.2d 1149, 1163 (Ct.App.1983).

 The *doctrine of cumulative error* is predicated on the finding of error in the first instance. *State v. Medina,* 128 Idaho 19, 29, 909 P.2d 637, 647 (Ct.App.1996). Although individual errors may be deemed harmless, "an accumulation of such errors may deprive a defendant of a fair trial." *State v. Hawkins,* 131 Idaho 396, 407, 958 P.2d 22, 33 (Ct.App.1998), *citing State v. Martinez,* 125 Idaho 445, 453, 872 P.2d 708, 716 (1994). Thus in order to find cumulative error, this Court must first conclude that there is merit to more than one error alleged by Lovelass and then conclude that these errors, when aggregated, denied Lovelass a fair trial. *See State v. Gray,* 129 Idaho 784, 804, 932 P.2d 907, 927 (Ct.App.1997) (defining cumulative error as an accumulation of errors which may be harmless individually but in the aggregate operate to deny the defendant a fair trial in violation of the defendant's constitutional right to due process).

 Given our analysis of the errors alleged by Lovelass in this appeal, we are not persuaded that he was denied a fair trial. Although there were irregularities surrounding Lovelass's trial, they do not singularly or in combination amount to a denial of due process of law sufficient to trigger application of the cumulative error doctrine. The right to due process does not guaranty a defendant an error-free trial. *See State v. Peite,* 122 Idaho 809, 822, 839 P.2d 1223, 1236 (Ct.App.1992).

### III.

### CONCLUSION

Because we find no fundamental error either in the trial judge's questioning of Lovelass or in the prosecutor's questioning and comments, we affirm Lovelass's judgment of conviction for the possession of a controlled substance.

Judge Pro Tem HARDING, concurs.

Judge LANSING, concurring.

I write separately to urge restraint in the questioning of witnesses by trial courts during jury trials. It is a practice that is fraught with peril. The judge's purpose in interjecting questions can be easily misunderstood by the jury, who may ascribe to the

judge's intervention a motive, viewpoint or effect far different than that intended by the judge. The mere fact that the court questions a particular witness may be sufficient to elevate the importance of that witness's testimony in the eyes of the jury. I find wisdom in the advice given in *United States v. Barbour*, 420 F.2d 1319, 1321 (D.C.Cir.1969) (quoting *Billeci v. United States*, 184 F.2d 394, 403 (D.C.Cir.1950)): "[T]he judge must remain a 'disinterested and objective participant in the proceeding,' and principles both fundamental and indestructible in our criminal law exhort him to hold to a minimum his questioning of witnesses in a jury trial."

I also caution that our decision should not be understood to hold that a curative instruction will always suffice to correct any error in a court's interrogation of witnesses. To the contrary, there is potential here for prejudice that no instruction could erase. *See, e.g., United States v. Saenz*, 134 F.3d 697, 713 (5th Cir.1998); *United States v. Tilghman*, 134 F.3d 414, 421 (D.C.Cir.1998); *Sit–Set, A.G. v. Universal Jet Exchange, Inc.*, 747 F.2d 921, 926 (4th Cir.1984); *United States v. Beaty*, 722 F.2d 1090, 1096 (3d Cir.1983).

In short, the wiser course, in my view, is to avoid the many inherent risks by foregoing the Rule 614 prerogative to question witnesses in jury trials except in circumstances of true need and, even then, to proceed with caution.