# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48969

<table>
<tr><td>

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

ARTHUR RAY TIBBS,

    Defendant-Appellant.

</td><td>

)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)

</td><td>

Filed: March 10, 2023

Melanie Gagnepain, Clerk

**THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY**

</td></tr>
</table>

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge.

Judgment of conviction for delivery of a controlled substance, <u>vacated</u>; and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Arthur Ray Tibbs appeals from his judgment of conviction for delivery of a controlled substance, Idaho Code § 37-2732(a)(1), with a persistent violator enhancement, I.C. § 19-2514. Tibbs alleges the district court committed reversible error in making a comment about the weight of the evidence to the jury and therefore erred in denying his motion for a mistrial. Because the district court expressed its view of the weight of the evidence on a critical issue in the case, the court erred in denying Tibbs' motion for a mistrial. The judgment of conviction is vacated, and the case is remanded for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Tibbs with delivery of a controlled substance, possession of a controlled substance with intent to deliver, possession of hashish, possession of drug paraphernalia, and being

1

a persistent violator. The delivery charge stemmed from allegations that a confidential informant purchased methamphetamine from Tibbs as part of a controlled buy. The remaining charges were based on a subsequent encounter where an officer stopped Tibbs for a traffic violation and recovered a variety of contraband during a search of his vehicle. Upon Tibbs' motion, the district court severed the delivery charge from the other charged conduct, and Tibbs proceeded to trial on one count of delivery of a controlled substance, with a persistent violator enhancement.

The State presented four witnesses at trial, three law enforcement officers who had been involved in the controlled buy and a forensics lab technician. Detective Jacobson testified to the process by which law enforcement facilitates a controlled buy and how this process played out during the encounter between the confidential informant and Tibbs. Detective Jacobson explained that he and other officers met the informant in a local park where the informant placed a call to Tibbs. Detective Jacobson testified that, during the call, the informant and Tibbs decided to meet at a local establishment to do "something," however the "something" was "wasn't explicitly explained." Detective Jacobson testified that his plan was for the confidential informant to purchase methamphetamine from Tibbs. Detective Jacobson explained the officers followed standard operating procedures before the controlled buy; they searched the informant and his vehicle for contraband and provided him with $60 and a wire to allow law enforcement to listen to the encounter with Tibbs.

Detective Jacobson testified he then followed the informant to a parking lot and observed the informant's vehicle during the encounter with Tibbs. However, because Detective Jacobson's view was restricted to only the informant's vehicle, he only saw the informant get out of the vehicle and then get back in a few minutes later; he did not see any transaction or exchange take place. Further, although Detective Jacobson could listen to the informant's encounter with Tibbs through the informant's wire, he testified that he did not believe the recording had any evidentiary value because the recording was not very good quality and did not pick up the entire conversation. Of the conversation Detective Jacobson heard, he could only recall the informant and Tibbs discussing cars, not anything related to a drug transaction. Detective Jacobson testified the officers met with the informant immediately after his encounter with Tibbs at which time the informant provided them with two baggies of a white crystalline substance, and the officers searched him and his vehicle a second time. Detective Jacobson testified that nothing of evidentiary value was found during either search and the $60 was gone.

2

Detective Fanciullo also testified about his participation in the planned controlled buy; he was part of the surveillance of the exchange and witnessed the confidential informant meeting with Tibbs. He watched the informant talk to Tibbs through the driver's side window of Tibbs' vehicle and did not see anyone else in or near the vehicle during this time. However, he similarly did not testify that he witnessed an exchange or transaction take place.

Sergeant Hedlund testified that he had multiple roles in the planned controlled buy; for example, he assisted in the initial search of the informant and the informant's vehicle as well as the subsequent search of the informant's vehicle after the informant was with Tibbs. Sergeant Hedlund testified, "And then I also served in the capacity where I observed a drug transaction being completed and recorded." Tibbs' counsel objected:

Defense: Judge, I'm going to object to the characterization of the transaction. I think that's something for the jury to make a determination about.
Court: [State].
State: I think there's sufficient evidence that one could draw the conclusion there was a drug transaction that day based on the evidence so far.
Court: I would agree based on Detective Jacobson's testimony. Overruled.

Sergeant Hedlund continued with his testimony and Tibbs moved for a mistrial at the end of his direct examination. Tibbs argued the exchange between the State and the district court in response to Tibbs' objection amounted to the court commenting on the evidence:

Your Honor, I'm making a motion for mistrial in this case based on the exchange with [State], Sergeant Hedlund and then my objection and comment by the Court regarding my objection to the characterization of it being a drug deal. The whole purpose of this trial is to determine whether or not a drug deal occurred, whether or not Mr. Tibbs was involved with that drug deal.

And so to characterize it as that and making a finding or conclusion of law that is in the purview of the jury. And so for the witness to characterize it as that, I think does call for a conclusion of law and I do believe that that's an inappropriate characterization or conclusion of the law. That's why I made the objection.

When the State responded back to say there's sufficient evidence to support it being a drug deal, along that line, and the Court agreed, I believe that's a comment on the evidence. . . .

It sends a message to the jurors that the Court believes there's sufficient evidence that a drug deal was heard. That's a huge message.

In response, the State argued Tibbs put the issue into question by raising the objection, requiring the State and the district court to respond and, therefore, Tibbs was not entitled to a mistrial as a result. Additionally, the State alleged the exchange in question only raised "an inference from the facts that there was a drug transaction," and was not an assertion that a drug

transaction occurred "beyond a reasonable doubt."  The district court reviewed the exchange at issue and, while it agreed with the State and denied the mistrial motion, it also found that a curative instruction would be appropriate:

> So this does cause me some concern and I think a curative instruction would be appropriate under the circumstances.  This is not a flat-out saying--it's not the State saying a drug transaction occurred.  It's not the Court saying a drug transaction occurred.  It's the State saying I think a reasonable jury could conclude and the Court saying I agree.  There is a difference there.  Words have meanings and they matter and it's not as stark as what [defense counsel] is indicating, but I understand her concern.

Accordingly, when the jury returned, the district court instructed the jury: "You are instructed that anything I may have said that could be viewed as a comment on the evidence should be disregarded by you in determining the facts."

The jury ultimately found Tibbs guilty of delivery of a controlled substance and being a persistent violator.  Pursuant to a plea agreement, Tibbs entered *Alford*[1] pleas to the other three charges.  Prior to sentencing, Tibbs filed a motion for a new trial, requesting the district court reconsider its decision that a limiting instruction cured any error in the exchange concerning Sergeant Hedlund's testimony.  The district court denied the motion, finding any prejudicial affect the court's statement may have had was cured by its subsequent jury instruction.  Tibbs timely appeals.

## II.

## STANDARD OF REVIEW

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1.  A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial.  I.C.R. 29.1(a).  Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made.  Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record.  Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer.  The standard, more accurately stated, is one of reversible error.  Our focus is upon the continuing impact on the trial of the incident

---

[1]  *See North Carolina v. Alford*, 400 U.S. 25 (1970).

4

that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

## III.

## ANALYSIS

Tibbs alleges the district court's comment during trial agreeing with the prosecutor that there was sufficient evidence from which one could conclude a drug transaction occurred constituted an opinion about the most critical issue in the case and therefore deprived him of a fair trial. As a result, Tibbs argues the district court committed reversible error when it denied his motion for a mistrial and the State will not be able to show the error was harmless. In response, the State contends the district court did not err, and, alternatively, any error was harmless because of the curative jury instruction and weight of the evidence presented.

First, we address whether the district court's remark in response to Tibbs' objection to Sergeant Hedlund's testimony was prejudicial. The State argues Sergeant Hedlund's characterization of what he witnessed as a drug transaction was not objectionable testimony and the prosecutor's response was similarly unobjectionable. Thus, the State contends, the district court's comment was merely an innocuous comment on the prosecutor's response to the objection and was not a comment on the weight of the evidence.

However, the issue on appeal is not whether the district court's ruling on Tibbs' objection to Sergeant Hedlund's testimony was erroneous; it is whether the court's comment supporting its evidentiary ruling was prejudicial. Remarks or comments by a trial court "which would tend to prejudice either of the parties to a jury trial are proscribed because of the great possibility that such an expression will influence the jurors." *State v. White*, 97 Idaho 708, 711, 551 P.2d 1344, 1347 (1976). Just because a remark by a trial court was intended to give clarity to an evidentiary ruling does not mean that it cannot also be prejudicial. *Id.* at 712, 551 P.2d at 1348. Thus, the test for determining whether a remark by a trial court is prejudicial is not whether there was evidence to support it, whether it gave clarity to an evidentiary ruling, or whether it was a mild affirmation of the strength of the evidence. The test is whether the court's remark constitutes a comment on the weight of the evidence or indicates an opinion of the court as to the guilt or innocence of the defendant. *Id.* at 711-12, 551 P.2d 1347-48.

5

Here, in context, the district court's comment constituted a comment on the weight of the evidence. Three officers, who were part of a planned controlled drug buy, testified to what they witnessed before, during, and after the informant's encounter with Tibbs. The district court expressed its opinion on whether the evidence supported a conclusion that a drug transaction took place:

> State: I think there's sufficient evidence that one could draw the conclusion there was a drug transaction that day based on the evidence so far.
>
> Court: I would agree based on Detective Jacobson's testimony. Overruled.

While the district court's agreement that there was sufficient evidence that one could conclude a drug transaction occurred is not an explicit assertion that the evidence shows a drug transaction occurred beyond a reasonable doubt, it is, nonetheless, a comment on the weight of the evidence. Accordingly, because the district court stated an opinion that the evidence, particularly Detective Jacobson's previous testimony, supported the conclusion that a drug transaction occurred between Tibbs and the informant, the court's comment was prejudicial.

Next, we turn to whether the district court's instruction to the jury was sufficient to cure the error. We generally presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). "Where a trial court's remarks have minimal prejudicial impact, a remedial instruction may be sufficient to cure the error." *Secol v. Fall River Med., P.L.L.C.*, 168 Idaho 339, 350, 483 P.3d 396, 407 (2021). However, where a trial court's comments reflect an opinion as to the evidence in a clear and unambiguous manner and relates to a critical issue in the case, a remedial instruction will not cure the prejudice. *Id.*

A comparison of two cases, *State v. Lovelass*, 133 Idaho 160, 162-63, 983 P.2d 233, 235-36 (Ct. App. 1999) and *White*, explains the difference between which trial court comments may be cured by a subsequent jury instruction and which are too prejudicial to be cured. In *Lovelass*, Lovelass was on trial for possession of a controlled substance after methamphetamine was found in a car he had been driving. *Lovelass*, 133 Idaho at 162-63, 983 P.2d at 235-36. Lovelass testified the car belonged to his friend and he was unaware that there were drugs inside. *Id.* at 163, 983 P.2d at 236. However, when questioned about tools that were also found in the car that seemed to correspond to Lovelass's job as a mechanic, Lovelass's testimony on whether he owned the tools

6

was inconsistent. *Id.* at 163-64, 83 P.2d at 236-37. The trial court then exercised its discretion to question Lovelass about this apparent inconsistency:

> Court:      I'm going to exercise my 614 prerogative. I'm a little lost. Perhaps my notes are incorrect or perhaps there's too much noise. Maybe I didn't hear you, but on cross-examination by Mr. Baughman you testified that the--your tools were not in the Camaro?
>
> Defendant: No, I did not. They were my tools.
>
> Court:      That's not what you--and now you say they were, but you're saying-- in answer to Mr. Baughman's question, you did not tell us that your tools were not in the Camaro that night?
>
> Defendant: I told him that they were.
>
> Court:      Well, I'll leave that up to the jury to determine or recall what his testimony was on cross-examination by Mr. Baughman.
> Mr. Baughman, do you wish to further recross now or not?
>
> State:      I have nothing in light of the court's questions.

*Id.* at 164, 983 P.2d at 237. The trial court subsequently instructed the jury:

> If during the trial I said or did anything which suggested to you that I am inclined to favor the claims or position of any party, you will not permit yourself to be influenced by any such suggestion. I did not express nor intend to express, nor did I intend to intimate, any opinion as to which witnesses are or are not worthy of belief; what facts have or have not been established; or what inferences should be drawn from the evidence. If any expression of mine seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it.

*Id.* at 166, 983 P.2d 233, 239. The jury found Lovelass guilty of possession of a controlled substance. *Id.* at 163, 983 P.2d at 236.

On appeal, Lovelass alleged the trial court's questioning constituted an attempt to impeach his credibility and because no objection or jury instruction could remove the resulting prejudice, this amounted to fundamental error. *Id.* at 165, 983 P.2d at 238. This Court held the trial court asked questions of multiple witnesses for both the State and the defense, not just Lovelass, and the court only asked clarifying questions regarding the peripheral issue of whether the tools in the car belonged to him. *Id.* at 166, 983 P.2d at 239. Therefore, the trial court's jury instruction cured any prejudice and, as such, there was no fundamental error. *Id.*

In contrast, the trial court's comments were too prejudicial to be cured by a remedial jury instruction in *White* because they were a clear comment on the weight of the evidence and concerned a critical issue in the case. White was charged with second degree kidnapping, and the case proceeded to trial. *White*, 97 Idaho at 710, 551 P.2d at 1346. At trial, White and the alleged victim's testimony differed significantly. The victim testified that after spending some time

together at a lake, White threatened her with a knife and forced her to drive them both away from the lake. *Id.* She explained that White proceeded to make her drive down a dirt road after dark where he made sexual advances on her. *Id.* The victim then testified that they stopped at a tavern around 11:00 p.m. where they each consumed at least one beer. *Id.* While she considered attempting to obtain help while there, she was unable to do so. *Id.* The victim testified that they then drove from the tavern and White got out of the car close to his home and she went to her parents' house. *Id.* In contrast, White testified the encounter was consensual, he was unresponsive to the victim's sexual advances, the victim was free to leave at any point, and he never threatened her, with or without a knife. *Id.* at 710-11, 551 P.2d at 1346-47.

During cross-examination of the victim, defense counsel asked why she had not attempted to drive away at the tavern as she was in the driver's seat, with the keys, and White had already exited the vehicle. *Id.* at 711, 551 P.2d at 1347. The victim responded that she was scared, and then the following exchange took place:

> Defense: Have you told the Prosecutor and everybody the whole story in this case?
> Witness: Yes.
> Defense: Did you tell the police this, that you had an opportunity to drive away?
> State: Your honor, I am going to object to that. We don't know--we talk about opportunity to drive away, an opportunity exists in her mind, not in the mind of the Prosecutor or Defense Counsel is not a fact.
> Court: I don't think there is any evidence she had an opportunity to drive away. I don't know anything about cars. Some of them you can--you have to lock them with the keys, and one thing and another. I can't say. I am going to sustain the objection.

*Id.* The trial court eventually instructed the jury that it "must disregard any expression of the court in passing on such matters unless otherwise expressly instructed by the court during the course of the trial." *Id.* at 712 n.3, 551 P.2d at 1348 n.3. The jury found White guilty of second degree kidnapping. *Id.* at 710, 551 P.2d at 1346.

On appeal, White alleged the trial court's remark that there was no evidence that the victim was able to drive away from the tavern constituted prejudicial error as it was a comment on the weight of the evidence and expressed the court's opinion on an issue which was critical to the guilt or innocence of the defendant--whether the victim willingly allowed White to accompany her that evening, or whether White forced her to drive him along that route. *Id.* at 711-12, 551 P.2d at 1347-48. The Idaho Supreme Court agreed, noting that if the alleged victim had chosen to forego an opportunity to escape, that evidence would be "important circumstantial evidence bearing on

8

the issue." *Id.* at 711, 551 P.2d at 1347. Because the trial court's comment in response to the State's objection expressed a belief that certain evidence critical to the defense position was not present, it went beyond the bounds of mere clarification of a ruling. *Id.* Accordingly, the Court held it constituted prejudicial error and was not remedied by the curative jury instruction. *Id.* at 712 n.3, 551 P.2d at 1348 n.3.

Here, like in *White*, the issue which the district court commented on was a critical issue in the case. Tibbs was charged with delivery of a controlled substance and the evidence presented at trial included testimony by officers from different vantage points who observed what was set up as a controlled drug buy. While there was circumstantial evidence that Tibbs and the confidential informant engaged in a drug transaction during their parking lot exchange, no witnesses testified that they observed the actual drug transaction take place. Thus, the critical question for the jury was whether the circumstantial evidence presented was sufficient to establish that Tibbs delivered methamphetamine to the informant.

The district court expressed its opinion on this critical question by stating that it agreed that there was sufficient evidence presented from which one could conclude that a drug transaction took place. Because the district court expressed a belief that certain evidence critical to the State's position was present, it went beyond the bounds of mere clarification of a ruling and the comment is so prejudicial it could not be remedied by a curative jury instruction. *See Secol*, 168 Idaho at 350-51, 483 P.3d at 407-08. Accordingly, the district court erred by denying Tibbs' motion for a mistrial.

### IV.
### CONCLUSION

The district court committed reversible error when it commented on the evidence presented at trial, and the error could not be cured by remedial jury instructions. Accordingly, the district court erred by denying Tibbs' motion for a mistrial. The judgment of conviction is vacated, and the case is remanded for proceedings in accordance with this opinion.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.

9